**Garland M. FITZPATRICK, et al., Plaintiffs,**

**Donald Matthews and Mortimer Covert, Plaintiffs-Appellants,**

**v.**

**Frederick BITZER, Chairman of the State Employees' Retirement Commission, et al., Defendants-Appellees.**

No. 740, Docket 74-2581.

United States Court of Appeals, Second Circuit.

Argued March 10, 1975.

Decided June 2, 1975.

Certiorari Granted Dec. 15, 1975. See 96 S.Ct. 561.

Paul W. Orth, Hartford, Conn. (Austin Carey, Jr., Hoppin, Carey & Powell, Hartford, Conn., of counsel), for appellants.

Sidney D. Giber, Asst. Atty. Gen., Hartford, Conn. (Carl R. Ajello, Atty. Gen. of Conn., F. Michael Ahern, Asst. Atty. Gen., Hartford, Conn., of counsel), for appellees.

William A. Carey, Gen. Counsel, Washington, D. C. (Joseph T. Eddins, Associ-

ate Gen. Counsel, Beatrice Rosenberg, Charles L. Reischel, Susan J. Johnson, Attys. E. E. O. C., Washington, D. C., of counsel), for United States Equal Employment Opportunity Commission as amicus curiae.

Before MOORE, MANSFIELD and GURFEIN, Circuit Judges.

MANSFIELD, Circuit Judge:

The principal question on this appeal is whether, in a suit against a state by its employees attacking its retirement plan as discriminating on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, the Eleventh Amendment bars a federal court from granting, in addition to injunctive relief, monetary damages and attorneys' fees. We hold that the state is shielded by the Eleventh Amendment against an award of damages but not against an award of attorneys' fees that is ancillary to the permissible grant of prospective injunctive relief..

This litigation was brought by the named plaintiffs as a class action on behalf of all present and retired male employees of the State of Connecticut who were members of the State Employees' Retirement System, a retirement benefit plan established by the State Employees Retirement Act, Conn.Gen.Stat. §§ 5–152 to 5–192 ("Retirement Act" herein). Asserting equal protection claims under the Fourteenth Amendment and statutory violations under 42 U.S.C. § 1983, plaintiffs sought declaratory and injunctive relief against the State Treasurer, State Comptroller, and the Chairman of the State Employees' Retirement Commission, to restrain continued enforcement by those officials of sexually discriminatory provisions of the Retirement Act. Plaintiffs objected to §§ 5–162, 5–163 and 5–166, which grant to women employees having 25 or more years of state service the right to retire with pension rights five (5) years earlier than similarly situated men, and further provide rate differentials favoring female over male employees who retire with less than 25 years of state service.

A three-judge court was convened to hear the case, 28 U.S.C. §§ 2281, 2284, but on October 15, 1973, plaintiffs amended their complaint to add a count alleging that the Retirement Act violated Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.* Title VII, which originally did not apply to state governments, had been amended by Public Law No. 92–261, 86 Stat. 103, effective March 24, 1972, to bring the states within its purview.[1] After the amendment of the complaint, the case was remanded to Chief Judge Clarie, sitting as a single district judge, for resolution of the claims under federal statutory law, see 28 U.S.C. § 2281.[2]

1. Section 2000e(a) of 42 U.S.C. was amended to provide that a "person" who can be an "employer" under Title VII includes "governments, governmental agencies [and] political subdivisions."

2. The three-judge court, in an opinion issued on June 10, 1974, determined that the federal statutory claim was "substantial" and remanded the case. Since an action for injunctive relief against a state statute, which is based on *both* federal constitutional and non-constitutional grounds, as is the present action, must be heard and determined by a three-judge court under 28 U.S.C. § 2281, *Florida Lime & Avocado Growers, Inc.* v. *Jacobsen*, 362 U.S. 73, 76–77, 80 S.Ct. 568, 4 L.Ed.2d 568 (1960), until recently the propriety of this remand may have been questioned. Since *Florida Lime*, however, the Court has held that a three-judge court need not be convened in an action to enjoin a state statute solely on the

ground that it conflicts with a federal statute, *Swift & Co.* v. *Wickham*, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965), and that, where a properly convened three-judge court is confronted with a case presenting both constitutional and non-constitutional grounds, it should first adjudicate the non-constitutional claim, *Rosado* v. *Wyman*, 397 U.S. 397, 402, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *King* v. *Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

The *Rosado* Court suggested that in that case "the most appropriate course may well have been to remand to the single district judge for findings and determination of the statutory claim," 397 U.S. at 403, 90 S.Ct. at 1213, and this suggestion seems to have been firmly adopted by the Court in *Hagans* v. *Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). In *Hagans* the district court, sitting alone, had determined the substantiality

After a hearing on the merits, Chief Judge Clarie, in a thorough opinion, found that retirement benefits fall within the language "compensation, terms, conditions, or privileges of employment" as used in Title VII and that such benefits are barred by Title VII from being made the subject of sex discrimination. 42 U.S.C. § 2000e–2(a)(1). He further determined that the Retirement Act violates Title VII insofar as it discriminates in favor of women over men in the number of years of service eligibility required for retirement and in the computation of retirement benefits. See 390 F.Supp. 278 (D.Conn.1974). He rejected defendants' contention that this suit was in reality one against the State of Connecticut and as such barred from federal court by the Eleventh Amendment to the Constitution, since the defendants here were sued individually and the state's immunity is not shared by state officials who act unconstitutionally or contrary to federal law. *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Scheuer* v. *Rhodes,* 416 U.S. 232, 237, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Defendants did not appeal from the court's determination that the Retirement Act violates Title VII, nor from the injunction against future payments from the Retirement Fund or from other state moneys under the Retirement System in a manner which would discriminate against men on the basis of sex.

The section of Title VII prescribing remedies which a court may employ against violation of that title states that, in addition to enjoining an unlawful employment practice, the court may

"order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . or any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e–5(g).

In addition to injunctive relief, plaintiffs also sought in their complaint an order requiring defendants to recalculate for all living retired male employees the benefits to which similarly situated female employees would have been entitled, and to pay out to the retired male employees the difference between the recalculated benefits and the benefits actually received.[3] Costs and reasonable attorneys' fees were also demanded pursuant to 42 U.S.C. § 2000e–5(k).[4] Chief Judge Clarie, however, determined that under the Supreme Court's recent decision in *Edelman* v. *Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), a federal court is barred by the Eleventh Amendment, absent the state's waiver or consent, from awarding a retroactive money judgment that would be satisfied

of the constitutional claims but then proceeded to consider on the merits the statutory claim without first convening a three-judge court. The Supreme Court approved this procedure, observing that if a three-judge court had been convened, "in view of what we have said in Rosado . . . [the three-judge panel] could then merely pass the statutory claim back to the single judge." 415 U.S. at 544, 94 S.Ct. at 1383. See also *Doe* v. *Lavine,* 347 F.Supp. 357, 359–60 (S.D.N.Y.1972) (Gurfein, *J.*). The single district judge thus had power to hear the statutory claim. Since Judge Clarie granted the injunction, we do not face the problem in *Murrow* v. *Clifford,* 502 F.2d 1066 (3d Cir. 1974), criticized in 88 Harv.L.Rev. 1028 (1975), holding that the power of the single district judge in these circumstances does not extend to the *denial* of an injunction.

For the same reasons this court has jurisdiction of the present appeal, even though the statutory claim decided below might have been properly decided by the three-judge panel, see *King* v. *Smith, supra,* in which event the appeal would lie only to the Supreme Court, 28 U.S.C. § 1253. See *Hagans* v. *Lavine, supra,* 415 U.S. at 543, 94 S.Ct. 1372.

3. Plaintiffs suggested several time periods which might be appropriate for the calculation of retrospective benefits. Judge Clarie did not determine which is appropriate, and in view of our holding, we also find it unnecessary to reach this question.

4. Section 2000e–5(k) provides:

"(k) In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person."

by a "payment of funds from the state treasury." 415 U.S. at 677, 94 S.Ct. at 1362.

On this appeal plaintiffs argue that there are several critical factors present in this case that did not confront the *Edelman* court. While we agree that *Edelman v. Jordan* is not in all respects controlling in this case, we believe Judge Clarie correctly resolved the Eleventh Amendment issue with respect to the back pay claim, and affirm. We reverse his holding, however, insofar as it barred the attorneys' fee claim.

## DISCUSSION

The Eleventh Amendment to the Constitution states:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

Adopted in 1798, the Amendment was enacted in direct response to widespread dissatisfaction with the Supreme Court's 1793 decision in *Chisholm* v. *Georgia*, 2 Dall. 419, 2 U.S. 419, 1 L.Ed. 440 which held that under Article III, § 2,[5] federal jurisdiction extended to a suit against the State of Georgia brought by South Carolina citizens to collect a debt owed by that state to an estate of which plaintiffs were executors.[6] Since the Amendment was intended to reverse the *Chisholm* decision,[7] it has been interpreted not literally but according to its purpose of restoring to Article III the "fundamental rule of jurisprudence" that "a state may not be sued without its consent," *Ex Parte New York*, 256 U.S. 490, 497, 41 S.Ct. 588, 589, 65 L.Ed. 1057 (1921). For instance, in fulfillment of the overall objective of protecting the sovereign immunity of the states the Court has decided that a suit for damages against a state by a citizen of the *same* state, though not specifically prohibited by the Amendment's language, is barred. *Hans* v. *Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). See also, e. g., *Principality of Monaco* v. *Mississippi*, 292 U.S. 313, 54 S.Ct. 745, 78 L.Ed. 1282 (1934) (suits by foreign countries as well as foreign citizens barred); *Ex Parte New York, supra* (state immune from private actions in admiralty as well as "suits in law or equity").

Likewise following this principle, the Supreme Court has long held that even though the state is not a named party the shield provided by the Amendment may in an appropriate case be invoked by the defendants, see, e. g., *In re Ayers*, 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216 (1887); *Louisiana* v. *Jumel*, 107 U.S. 711, 2 S.Ct. 128, 27 L.Ed. 448 (1882). Looking to substance rather than to form, the Court decided that immunity should not depend on "the mere names of the titular parties but . . . the essential nature and effect of the proceeding, as it appears from the entire record." *Ex Parte New York*, 256 U.S. 490, 500, 41 S.Ct. 588, 590, 65 L.Ed. 1057 (1921); see *Hagood* v. *Southern*, 117 U.S. 52, 67, 6 S.Ct. 608, 29 L.Ed. 805 (1886); *Smith* v.

---

5. Article III, § 2, clause 1 provides:

"The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction;—to Controversies to which the United States shall be a Party;—to Controversies between two or more States;—between a State and Citizens of another State;—between Citizens of different States;—between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects."

6. See 1 C. Warren, *The Supreme Court in United States History* 96 (1922). Warren observes that the surprise with which the *Chisholm* decision was greeted is attributable to the fact that "the vesting of any such jurisdiction over the sovereign states had been expressly disclaimed and even resented by the great defenders of the Constitution, during the days of the contest over its adoption." *Id.*

7. See Cullison, *Interpretation of the Eleventh Amendment*, 5 Houston L.Rev. 1, 6–14 (1967).

*Reeves*, 178 U.S. 436, 438–40, 20 S.Ct. 919, 44 L.Ed. 1140 (1900). "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest . . .," *Ford Motor Co.* v. *Department of the Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945), and the Eleventh Amendment bars a private suit "seeking to impose a liability which must be paid from public funds in the state treasury . . .," *Edelman* v. *Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974); see *Kennecott Copper Corp.* v. *State Tax Comm'n*, 327 U.S. 573, 66 S.Ct. 745, 90 L.Ed. 862 (1946); *Great Northern Life Ins. Co.* v. *Read*, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944).

On the other side of the coin, the Eleventh Amendment does not bar a suit to enjoin enforcement by a state officer of an unconstitutional state statute. *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The Court, in reaching this result, relied on the common law principle that a state officer acting illegally is deemed to act "without the authority of" the state and therefore outside its shield of sovereign immunity. 209 U.S. at 159–60, 28 S.Ct. 441. Furthermore, although the Eleventh Amendment shields the state against a retroactive award of monetary damages payable out of the state treasury as compensation for its past breach of a legal duty, a judgment requiring a state to expend some public funds in connection with obtaining or implementing injunctive relief against it is permissible, even though the award in such a case has "an ancillary effect on the state treasury," *Edelman* v. *Jordan*, 415 U.S. 651, 668, 94 S.Ct. 1347, 1358 (1974); *Jordan* v. *Fusari*, 496 F.2d 646, 651 (2d Cir. 1974).

Plaintiffs here contend that the "recalculated benefits" sought by them would be paid neither by the defendants personally nor out of "public funds in the state treasury" but from the Retirement Fund[8] pursuant to Conn.Gen.Stat. § 5–156 which provides:

> "All member contributions and state appropriations shall be held in a *separate retirement fund* by the treasurer, who may invest and reinvest as much of the fund as is not required for current disbursements . . . ." (Emphasis added).

Since all retirement benefit moneys are first paid into this "separate fund," plaintiffs argue that this case does not come within the rule of *Ford Motor Co.* and *Edelman* and that the Eleventh Amendment is therefore no bar to the action. Although the defendants did not deem this argument worthy of response in their brief, the substantiality of plaintiffs' assertion has been focused by a recent District of Rhode Island decision holding that Rhode Island's state retirement fund was unprotected by the state's Eleventh Amendment shield. *Bowen* v. *Hackett*, 387 F.Supp. 1212 (1975).

In determining whether a separate state agency or institution shares the Eleventh Amendment shield as an "alter ego" of the state, a court must look to numerous factors, no one of which is conclusive, see *Krisel* v. *Duran*, 258 F.Supp. 845, 848–49 (S.D.N.Y.1966) (Weinfeld, *J.*), affd. *per curiam*, 386 F.2d 179 (2d Cir. 1967), cert. denied, 390 U.S. 1042, 88 S.Ct. 1635, 20 L.Ed.2d 303 (1968); *Zeidner* v. *Wulforst*, 197 F.Supp. 23 (E.D.N.Y.1961); cf. *State Highway Comm'n* v. *Utah Const. Co.*, 278 U.S. 194, 199, 49 S.Ct. 104, 73 L.Ed. 262 (1929). The most important, of course, is whether, in the event plaintiff prevails, judgment will have to be paid out of the state treasury. *Whitten* v. *State University Const. Fund*, 493 F.2d 177, 180 (1st Cir. 1974) (Moore, *J.*); *Gordenstein* v. *University of Delaware*, 381 F.Supp. 718, 721 (D.Del.1974); *Bowen* v. *Hackett, su-*

---

8. Plaintiffs have apparently changed their view of the source of the award of back benefits. Their amended complaint simply sought an award from "the retirement fund *and/or state moneys.*" (Emphasis added).

*pra*; *Krisel* v. *Duran, supra*, 258 F.Supp. at 849; see *Edelman* v. *Jordan, supra*, 415 U.S. at 663, 94 S.Ct. 1347. Also to be considered is whether the entity sued is performing a governmental or proprietary function, whether it has been separately incorporated, whether it has the power to sue and be sued and enter into contracts, the degree of autonomy over its operations, and whether the state has immunized itself from responsibility for the agency's operations. See *Whitten* v. *State University Const. Fund, supra*, 493 F.2d at 179–80; *Gordenstein* v. *University of Delaware, supra*; *Krisel* v. *Duran, supra*.[9]

■ In concluding in *Bowen* v. *Hackett* that the Rhode Island retirement fund was not an "alter ego" of the state, the court found that the fund was created solely from the contributions of employees and that the state had no legal duty to replenish the fund if it should become depleted or pay a judgment against the fund. Here the situation is vastly different. Regardless of whether Connecticut would be liable for a judgment against the Retirement Fund, the state is required to appropriate funds on an actuarial basis, the amount being determined each year, and to pay *at least* 75% of the total retirement income payments for each year. Conn.Gen.Stat. § 5–156a. A judgment against the fund would thus automatically increase the obligations of the general state treasury [10] and amount to a judgment against the state. Furthermore, the Connecticut Retirement Fund has none of the indicia of independence from the state, such as separate incorporation or a power to sue in its own name. It is controlled by the state treasurer, see

Conn.Gen.Stat. § 5–156. Although the money in it may be used only for a designated purpose, it nonetheless remains "public money." *Whitten* v. *State University Const. Fund, supra*; *Bowen* v. *Hackett, supra*; cf. *Kennecott Copper Corp.* v. *State Dep't of Taxation*, 327 U.S. 573, 66 S.Ct. 745, 90 L.Ed. 862 (1946) (tax payments held in separate fund).

Plaintiffs' argument thus boils down to an assertion that the effect on the general public treasury is permissibly indirect because the state treasury will not feel the pinch until the time comes for the next annual appropriation to the fund. However, this view would distort the meaning of the term "ancillary" as used by the Court in *Edelman* and would have the effect of sharply curtailing, if not emasculating, the concept of a "suit against the state." Accordingly, we hold that the action here, insofar as it seeks damages, is in essence against the state and as such is subject to the Eleventh Amendment.[11]

■ Plaintiffs' major contention is that, even assuming that the action is properly characterized as one against the state which would normally entitle the state to invoke its Eleventh Amendment immunity, the state here has waived that immunity and in effect consented to suit. Although barriers to federal court jurisdiction normally may not be "waived" by the parties, *Mansfield, Coldwater & Lake Michigan Ry.* v. *Swan*, 111 U.S. 379, 384, 4 S.Ct. 510, 28 L.Ed. 462 (1884), it has been long held that a state may consent to a suit that would otherwise be barred by the Eleventh Amendment, see, e. g., *Clark* v. *Barnard*, 108 U.S. 436, 2 S.Ct. 878, 27 L.Ed. 780 (1883),

**9.** Determination of the scope of the Eleventh Amendment shield is a matter of federal law, *Matherson* v. *Long Island State Park Comm'n*, 442 F.2d 566, 568 (2d Cir. 1971), but state law must be analyzed to determine the status of the sued entity in the government structure of the state, *Skehan* v. *Board of Trustees*, 501 F.2d 31, 41 (3d Cir. 1974).

**10.** Conn.Gen.Stat. § 5–156 provides that the legislature "shall appropriate" to the retire-

ment fund the amount needed to maintain actuarially required levels.

**11.** Although not controlling, another persuasive factor in reaching this conclusion is that Connecticut law treats money in the retirement fund as "public money." *Dowe* v. *Egan*, 133 Conn. 112, 48 A.2d 735 (1946).

since the purpose of the Amendment is merely to limit federal jurisdiction to those suits to which a state has not consented.

Plaintiffs do not suggest that consent to their suit was expressly or directly given by the State of Connecticut. Rather they argue that waiver or consent may be inferred from certain action taken by the state itself, and that in any event Congress was vested by the Fourteenth Amendment to modify Connecticut's immunity in civil rights suits.

■ First it is argued that Connecticut waived its immunity by its own enactment of certain laws. Plaintiffs rely on Article XI, § 4 of the state Constitution which provides, "Claims against the state shall be resolved in such manner as may be provided by law." It is sufficient that the Connecticut state courts, albeit in the context of a different type of claim, have determined that this section does not waive sovereign immunity, *Fidelity Bank v. State of Connecticut,* 348 A.2d 633 (1974). But even if Connecticut allowed suit against it in the context of a claim for damages due to discrimination, it is settled that a state may "give its consent to be sued in its own courts by private persons or by corporations, in respect of any cause of action against it and at the same time exclude the jurisdiction of the Federal courts . . .," *Smith v. Reeves,* 178 U.S. 436, 445, 20 S.Ct. 919, 922, 44 L.Ed. 1140 (1900).[12] Indeed unless a "clear indication" to submit to suit in federal as well as state court can be found, a federal court cannot read the state's consent to be sued in its own courts as embracing federal jurisdiction. *Great Northern Life Ins. Co. v. Read,* 332 U.S. 47, 54, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); *Knight v. State of New York,* 443 F.2d 415, 419

(2d Cir. 1971) (Friendly, *J.*). Here, there is not the slightest indication of intent to submit to federal suit.

For the same reasons plaintiffs' citation of various provisions of the Connecticut Constitution and statutes prohibiting discrimination in that state is of no avail. See, e. g., Conn.Const. Art. I, § 20, Conn.Gen.Stat. §§ 4–61c to 4–61j. Even if these sections authorized a damage action for discrimination against the state, no possible inference could be drawn that the state had also consented to a similar action in federal court. *Great Northern Life, supra; Knight v. State of New York, supra.*

Before reaching the more troublesome question of whether Connecticut has waived its immunity by engaging in activity subject to Congressional regulation under the Fourteenth Amendment, we must first determine whether Title VII as amended has authorized a private action for damages against the state. If it has not, that would be the end of the matter, since in the absence of Congressional authorization plaintiffs would be out of court. Serious doubts are raised as to existence of such authority by the Supreme Court's recent decision in *Employees v. Department of Public Health & Welfare,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973), where it faced a similar problem under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 200 *et seq.* In 1966 the FLSA, which regulates the working conditions of those producing goods for commerce, was amended to bring within its scope state-operated hospitals and the employees thereof, see Pub.L. 89–601, 80 Stat. 830–32, 837 (Sept. 23, 1966). Prior thereto states had been excluded from the Act. Section 16(b) of FLSA, 29 U.S.C. § 216(b), which authorized a private ac-

---

12. The *Smith v. Reeves* Court noted that the state's power to limit its consent is

 "subject always to the condition, arising out of the supremacy of the Constitution of the United States and the laws made in pursuance thereof, that the final judgment of the highest court of the State in any action

brought against it with its consent may be reviewed or reexamined, as prescribed by the act of Congress, if it denies to the plaintiff any right, title, privilege or immunity secured to him and specially claimed under the Constitution or laws of the United States." 178 U.S. at 445, 20 S.Ct. at 922.

tion against an employer for amounts of unpaid minimum wages or overtime compensation in "any court of competent jurisdiction," remained unchanged by the 1966 Amendments. The Court held that although Missouri was covered by the "literal" language of the FLSA and subject to its substantive provisions, *Maryland* v. *Wirtz*, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968), Congress had not sufficiently indicated an intention to sweep away Missouri's immunity from private suit. In reaching this conclusion the Court relied upon several circumstances: Congress' failure to change the remedial provisions of § 16(b) in amending the Act; the harshness of the monetary penalties provided by the Act in addition to recovery of actual damages; and the Act's provision for its enforcement by the Secretary of Labor in federal court and apparently by any party in state court. 411 U.S. at 285–86, 93 S.Ct. 1614. The Court concluded that the "delicate federal-state relationship" was preserved under the Act by remitting private parties to federal court relief only through the Secretary of Labor. *Id.*

The amendments to Title VII, like those to the FLSA, merely changed the definition of "employer" to include the states,[13] and did not specifically deal with the question of a state's immunity from suit. Nor does Title VII's legislative history reveal a specific intention to lift that immunity. However, it is evident that the 1972 amendments to Title VII, unlike the amendments to the FLSA reviewed by the court in *Employees*, did contemplate private actions against state governments or their agencies. Title 42 U.S.C. § 2000e–5(f)(1), the relevant portion of which is set out in the margin,[14] spells out the manner in which a civil action may be brought after a complaint is filed with the Commission. Actions against a "government, governmental agency, or political subdivision" may be prosecuted in the first instance only by the Attorney General, but aggrieved employees may intervene in such an action. If the Attorney General does not commence the action or enter into a conciliation agreement within 180 days, the aggrieved employees may commence a private suit against the government or governmental agency

13. See note 1 *supra*.

14. "(f)(1) If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) or (d) of this section, the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, *the Commission may bring a civil action* against any respondent not a government, governmental agency, or political subdivision named in the charge. In the case of a respondent which is a government, governmental agency, or political subdivision, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court. The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission or the Attorney General in a case involving a government, governmental agency, or politi-

cal subdivision. If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, *governmental agency, or political subdivision*, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member *of the Commission, by any person whom the* charge alleges was aggrieved by the alleged unlawful employment practice."

within 90 days thereafter. By providing these special procedures for suits involving governments, Congress here demonstrated an intention to make available in some cases private suits against governments. That *state* employees were to be put on a par with all other employees is evidenced by statements in both the House and Senate Reports accompanying the 1972 amendments to the effect that all state and local government employees were to have access to the remedies available under the Act.[15] Thus, unlike the situation in *Employees,* Congress intended to authorize a private suit for backpay by state employees against the state. To suggest otherwise would be to hold Congress to a degree of legislative specificity it could not and does not customarily meet. See *Employees* v. *Department of Public Health & Welfare,* 411 U.S. at 289–90, 93 S.Ct. 1614 (Marshall, *J.,* concurring).

 Although we must conclude that Congress authorized private damage suits against the states for violation of Title VII, we reject any suggestion that an inference of voluntary waiver or consent may be drawn from the state's mere continuance of its governmental function of hiring employees to perform state duties and of providing for their working conditions, including retirements. It is obvious that Connecticut, which had engaged in these activities as an essential part of its functions long before Title VII was amended to include the states, would, regardless of the amendment, have no choice but to continue doing so thereafter or cease functioning as a state. Thus no basis exists for finding voluntary waiver. Cf. *Fay* v. *Noia,* 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); *Johnson* v. *Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). See Note, Private Suits Against States in Federal Courts, 33 U.Chi.L.Rev. 331, 336 (1966). Although its continued engagement in these activities might conceivably be labelled a "constructive" consent, the Supreme Court in *Edelman* v. *Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1360 (1974), stated that "[c]onstructive consent is not a doctrine commonly associated with the surrender of constitutional rights, and we see no place for it here."

*Parden* v. *Terminal Ry. Co.,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), relied upon by plaintiffs, is clearly inapposite. There the State of Alabama, in face of the fact that interstate railroads were subject to the Federal Employees Liability Act, 45 U.S.C. § 51 *et seq.,* and had been subjected to extensive regulation by Congress, see *California* v. *Taylor,* 353 U.S. 553, 77 S.Ct. 1037, 1 L.Ed.2d 1034 (1957) (state-owned railroad subject to Railway Labor Act); *United States* v. *California,* 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567 (1936) (same subject to Federal Safety Appliance Act), undertook the operation of such a railroad, which was essentially a proprietary business. In these circumstances a finding of voluntary waiver of constitutional

---

**15.** The House Report of the 1972 Act notes: "Few of [the many state and local government] employees, however, are afforded the protection of an effective forum to assure equal employment. The bill amends section 701 of the Civil Rights Act of 1964 . . . to include State and local governments, governmental agencies and political subdivisions within the definition of an 'employer' under Title VII. *All State and local government employees would under the bill have access to the remedies available under the Act.*" House Rep.No.92–238 (92d Cong., 1st Sess. 1971), 1972 U.S.Code Cong. & Admin.News, at p. 2152 (emphasis added). Similarly, the Senate Report stated:

"The Committee believes that employees of State and local governments are entitled to the same benefits and protections in equal employment as the employees in the private industry section of the economy.

". . . By amending the present section 701 to include state and local governmental units within the definition of an 'employer' under Title VII, all State and local governmental employees would, under the provisions of the bill, have access to the remedies under the Act." Senate Rep.No.92–415 (92d Cong., 1st Sess.1971) in *Legislative History of the Equal Employment Opportunity Act of 1972* at 418.

immunity from suit was fully justified. No such situation exists here. Connecticut's employment of its employees and adoption of a retirement system had long predated Title VII.

Plaintiffs next contend that, even assuming that Connecticut has not by its own conduct waived its Eleventh Amendment immunity or consented to suit, Congress nevertheless had the power to subject it to a private action for damages for denial of civil rights. While conceding that Congress cannot expand the scope of federal jurisdiction beyond the limits of the Constitution, *Marbury* v. *Madison*, 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60 (1803), plaintiffs assert that Congress' power may be found in the Fourteenth Amendment, which must be deemed to have modified the Eleventh in the area of civil rights. Plaintiffs point to the history of the Fourteenth Amendment, which evolved from a dissatisfaction with the states' failure to protect the civil rights of their citizens, and to the statements of various Congressmen who objected to the post-Civil War legislation on the ground that it would impair the "sovereignty" of the States.[16] It is argued that "[i]nasmuch as the post-Civil War amendments were, by their essential nature, inconsistent with the existence of a sovereign immunity defense, the states by ratifying those Amendments waived to a limited extent their general right not to be sued by a private citizen." We disagree.

The question is not as broad as applicants would have it. Essentially it is a narrow one, which deals more with procedure than substance, i. e., whether the particular remedy sought here, a private federal action for retroactive damages, is a constitutionally permissible method of enforcing Fourteenth Amendment rights, notwithstanding the immunity granted to the states by the Eleventh Amendment. Accepting the fact that legislation enforcing individual rights under the Fourteenth Amendment must to some extent subject states to private suits, it does not follow that Congress necessarily has power to provide the particular remedy sought here.[17]

To the extent that a tension exists between enforcement of rights under the Fourteenth and the state's immunity under the Eleventh, our duty is to reconcile and give effect to both amendments insofar as possible. See *Prout* v. *Starr,* 188 U.S. 537, 543–44, 23 S.Ct. 398, 47 L.Ed. 584 (1903). Observing that "particularly after the Civil War, Congress undertook to make federal courts the primary guardians of constitutional rights," Justice Brennan in his separate opinion in *Perez* v. *Ledesma,* 401 U.S. 82,

---

**16.** For example, plaintiffs quote Congressman Rogers, who, opposing the 1866 Civil Rights Bill, stated:

"I ask you to stand by the law of the country and to regulate these Federal and State systems upon the grand principles upon which they were intended to be regulated, that we may hand down to those who are to come after us this bright jewel of civil liberty unimpaired; and I say that the Congress or men who will strip the people of these rights will be handed down to perdition for allowing this bright and beautiful heritage of civil liberty embodied in the powers and sovereign jurisdiction of the States to pass away from us." Cong.Globe, 39th Cong., 1st Sess. 1122–23.

**17.** Plaintiffs argue that the "Civil War Amendments created precisely the circumstances in which immunity had no

place, by stripping states of their hitherto existing sovereign power to sanction slavery, deny equal protection or due process of laws, or abridge the right to vote on account of race. In the limited areas prescribed by these Amendments the states have *no authority the exercise of which can be protected from litigation,* and in such cases the purpose underlying the Eleventh Amendment cannot be served." (Emphasis added). This argument suggests that Congress has unlimited power to provide remedies to enforce the Fourteenth Amendment. But the mere fact that Congress may constitutionally apply the substantive provisions of certain legislation against the states is not inconsistent with the fact that certain remedies may not be available against the states. *Maryland* v. *Wirtz,* 392 U.S. 183, 200, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968). See also *California* v. *Taylor,* 353 U.S. 553, 568 n. 16, 77 S.Ct. 1037, 1 L.Ed.2d 1034 (1957).

106, 91 S.Ct. 674, 687, 27 L.Ed.2d 701 (1971), recognized that *"Ex Parte Young* was the culmination of efforts by this Court to harmonize the principles of the Eleventh Amendment with the effective supremacy of rights and powers secured elsewhere in the Constitution." *Edelman* v. *Jordan, supra,* must be read as reaffirming the necessity of maintaining this balance between enforcement of individual constitutional rights and protection of the state's fiscal administration under the Eleventh. See 415 U.S. at 666–69, 94 S.Ct. 1347; The Supreme Court, 1973 Term, 88 Harv.L.Rev. 41, 247 (1974).

This desirable balance should not be upset in the context of suits to enforce Fourteenth Amendment rights unless other means that might be made available for enforcement of rights under that Amendment are so ineffective that Congress, in promulgating the Fourteenth Amendment after its adoption by more than three-quarters of the Union, necessarily implied that the Eleventh Amendment's remedial bar to a damage action against a state must yield. There is no reason to find such a necessary implication, however, since Congress, under the balance as reaffirmed in *Edelman,* has at its disposal various methods other than private federal damage suits for enforcing Fourteenth Amendment rights.

The prospective injunctive relief available under *Ex Parte Young,* if it stood alone, should offer adequate relief as a remedy for enforcement of Fourteenth Amendment rights against the states. However, other remedies either are or may be made available. The Eleventh Amendment presents no bar to a suit by the United States against a state, *United States* v. *Mississippi,* 380 U.S. 128, 85 S.Ct. 808, 13 L.Ed.2d 717 (1965). Congress can authorize a suit by the federal government on a private plaintiff's behalf and it has done so in Title VII. See 42 U.S.C. § 2000e–5(f)(1). A suit by the United States against a state to recover back benefits on behalf of persons protected by a federal statute is permissible. *Brennan* v. *State of Iowa,* 494 F.2d 100, 104 (8th Cir. 1974); see *Department of Employment* v. *United States,* 385 U.S. 355, 87 S.Ct. 464, 17 L.Ed.2d 414 (1966).[18]

Furthermore, although Congress did not suggest that jurisdiction over private actions under Title VII extends to state courts,[19] it might have done so.[20] State courts would have faced no constitutional barrier to granting the retrospective damage relief Congress authorized since they are free from the limitations of the Eleventh Amendment, which restrict only federal judicial power.[21] We need

---

18. Plaintiffs' claim that *United States* v. *Mississippi* authorizes their suit because it was brought "in place of the Attorney General" must, however, be rejected. While it is true that, following the procedures outlined in 42 U.S.C. § 2000e–5(f)(1), the instant suit was first referred to the Attorney General, who chose not to sue but issued to the plaintiffs a "right to sue" letter, it can hardly be contended the United States is responsible for the management of this suit, thus meeting the concern of the *Employees* Court for maintaining the "delicate federal-state relationship," see p. 3937, *supra.* Nor can it even be contended that the United States is the real party in interest, cf. *Standing Rock Sioux Indian Tribe* v. *Dorgan,* 505 F.2d 1135, 1140 (8th Cir. 1974). Plaintiffs seek the back benefits solely for themselves; whatever interest the public had in this lawsuit has already been served by entry of the injunction. Moreover the failure of the Attorney General to prosecute this action

himself can hardly be characterized as a finding that plaintiffs' suit is of special public interest.

19. See 42 U.S.C. § 2000e–5(f)(3).

20. Congress has made state courts available for private federal damage actions against the states under the Fair Labor Standards Act, § 16(b), 29 U.S.C.A. § 216(b) (1975 Supp.) (as amended April 8, 1974), and the Federal Employers' Liability Act, § 6, 45 U.S.C. § 56.

21. Plaintiffs point out that the Fourteenth Amendment was passed at a low ebb of confidence in the willingness of the state courts to comply with this duty, see, e. g., *Mitchum* v. *Foster,* 407 U.S. 225, 240–42, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972); *Monroe* v. *Pape,* 365 U.S. 167, 174–80, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). But even so, there is little need to assume that the duties otherwise imposed on the states would not be sufficient to remedy problems of state recalcitrance without also

not consider whether Congress could, consistently with the Tenth Amendment, compel a state to permit its citizens to enforce their Fourteenth Amendment rights against it in its courts except to note that under the Supremacy Clause and the general principle that state courts are co-equal partners with the federal courts in the enforcement of federal law, see *Employees v. Department of Public Health and Welfare,* 411 U.S. 279, 298, 93 S.Ct. 1614, 36 L.Ed.2d 251 (Marshall, *J.,* concurring); *Martin v. Hunter's Lessee,* 1 Wheat. 304, 339–40, 14 U.S. 304, 4 L.Ed. 97 (1816), state courts have been obligated to entertain congressionally-authorized private suits where state court jurisdiction extends to suits of the same character, see *Testa v. Katt,* 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947).[22]

Thus there is no reason in this case to depart from the balance between the Eleventh Amendment and other constitutional interests which was most recently reaffirmed in *Edelman.* In any event it may not still be open to this court to accept plaintiffs' invitation to disregard the Eleventh Amendment in Fourteenth Amendment cases. While Justice Marshall's dissent in *Edelman* suggested that the Supreme Court had not decided whether the Eleventh Amendment is limited by the later enactment of the Fourteenth, 415 U.S. at 694 n.2, the majority in that case expressly overruled *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), *State Department of Health and Rehabilitative Services v. Zarate,* 407 U.S. 918, 92 S.Ct. 2462, 32 L.Ed.2d 803 (1972) (per curiam), and *Wyman v. Bowens,* 397 U.S. 49, 90 S.Ct. 813, 25 L.Ed.2d 38 (1970) (per curiam), all cases involving Fourteenth Amendment causes of action, insofar as those cases allowed assessment of retroactive damages against the state. 415 U.S. at 670–71, 94 S.Ct. 1347. See also

*Wilkerson v. Meskill,* 501 F.2d 297 (2d Cir. 1974), in which this court affirmed *per curiam* on the basis of *Edelman* a dismissal of plaintiff's claims to back wages from the state based on equal protection and due process, although without considering the arguments presented here. Further see *Skehan v. Board of Trustees,* 501 F.2d 31, 42 n.7 (3d Cir. 1974); *Burton v. Waller,* 502 F.2d 1261, 1273 (5th Cir. 1974), *cert. denied,* 420 U.S. 964, 95 S.Ct. 1356, 43 L.Ed.2d 442 (1975).

Plaintiffs' request for costs and attorneys' fees stands on a different footing. While the district court was without jurisdiction to entertain the plaintiffs' claims for retroactive damages against the state, the court did have jurisdiction to entertain the claim for prospective injunctive relief against state officers, *Ex Parte Young, supra,* based on the state's failure in its duty to conform its conduct to federal law and its threatened continuation on the same illegal course in the future. In order to invoke the court's power to enjoin such future illegal conduct, it was necessary to incur costs and attorneys' fees which, as we recently held in *Class v. Norton,* 505 F.2d 123, 126–27 (2d Cir. 1974), may be assessed as having a permissible "ancillary effect" on the state treasury, see *Edelman v. Jordan,* 415 U.S. at 667–68, 94 S.Ct. 1347, of a prospective order. See *Sims v. Amos,* 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1973), *aff'g,* 340 F.Supp. 693 (M.D.Ala.1972) (three-judge court); *Souza v. Travisono,* 512 F.2d 1137, 1139 (1st Cir. 1975). We adhere to *Class* and accordingly decline to join those circuits which have denied attorneys' fees, see *Skehan v. Board of Trustees,* 501 F.2d 31, 42 (3d Cir. 1974); *Jordon v. Gilligan,* 500 F.2d 701 (6th Cir. 1974); *Taylor v. Perini,* 503 F.2d 899, 901 (6th Cir. 1974); *Named Indiv. Members*

reading into the Fourteenth Amendment a *sub silentio* elimination of the states' Eleventh Amendment rights.

**22.** Of course a state might decline to exercise such congressionally-mandated jurisdiction on

grounds of sovereign immunity. However, this would pose a problem distinct from the question of the scope of federal remedial power under the Eleventh Amendment.

*of San Antonio Conservation Soc'y v. Texas Highway Dept.,* 496 F.2d 1017, 1026 (5th Cir. 1974).

For the foregoing reasons we remand the case to the district court for the purpose of determining in its sound discretion whether an award of attorneys' fees is appropriate and, if so, the amount that may reasonably be awarded.