Doris M. ADAMS et al., Plaintiffs,

v.

**RICHLAND SCHOOL DISTRICT ONE, a body politic and corporate, et al., Defendants.**

**Civ. A. No. 75–1330.**

United States District Court, D. South Carolina, Columbia Division.

March 22, 1976.

---

Craig K. Davis, Medlock & Davis, Columbia, S. C., for plaintiffs.

Francis P. Mood, Boyd, Knowlton, Tate & Finlay, Columbia, S. C., for defendants.

## ORDER ON DEFENDANTS' MOTION TO DISMISS

HEMPHILL, District Judge.

This is an action brought by two hundred forty-seven (247) individual plaintiffs against Richland County School District No. One, its Board, and certain of its administrative officers for compensatory and additional "liquidated damages," counsel fees, interest, and costs as a consequence of alleged violations of the equal pay provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., as amended, specifically 29 U.S.C. § 206(d)(1) and 29 U.S.C. § 216(b).

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, defendants filed certain motions directed to the complaint of plaintiffs prior to answering. These motions deal generally with the dismissal of certain individuals as parties defendant, the striking of certain provisions of plaintiffs' complaint or, in the alternative, to make more definite and certain, and dismissal of plaintiffs' complaint for lack of jurisdiction. Since the last motion is dispositive in nature and therefore most significant, the parties and the court agree that it should be disposed of prior to any consideration of defendants' remaining motions. This order therefore deals only with the question of whether the action should be dismissed for lack of jurisdiction.

Defendants contend that the present action cannot be maintained in this federal forum because of the provisions of the Eleventh Amendment to the United States Constitution.[1] Despite its somewhat restrictive language, that amendment has long been construed as prohibiting federal courts from entertaining suits brought against a state by its own citizens as well as those brought by citizens of other states.

---

1. The Eleventh Amendment provides in full: The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

*Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Employees of Dept. of Pub. Health & Welfare, State of Missouri v. Department of Public Health & Welfare, State of Missouri,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973). The instant action would fall into this category if defendants' contentions are correct.

In any jurisdictional determination involving the Eleventh Amendment, there are three principal areas of inquiry. The first is whether the defendant is a state or of such a nature that it constitutes an "alter ego" of the state and a suit against it is therefore tantamount to an action against the state itself. The second inquiry must be whether the provisions of the Eleventh Amendment are otherwise applicable and, if so, the court must make a third determination—whether the state has somehow waived the Eleventh Amendment immunity to which it otherwise would be entitled. In this case, the first question must be answered in the negative, however, and it is unnecessary to consider the remaining issues.

Defendants rely heavily upon the Supreme Court's decision in *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). There the Court reaffirmed the view that the Eleventh Amendment barred any suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury. Perhaps more significantly, the Court recognized that the Eleventh Amendment does not, for example, bar prospective injunctive relief under the doctrine of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) which would have an ancillary but nevertheless adverse effect on the state treasury. An inevitable consequence of the principle announced in *Ex parte Young* may be that "(S)tate officials, in order to shape their official conduct to the mandate of the Court's decrees, would more likely have to spend money from the state treasury than if they had been left free to pursue their previous course of conduct." 415 U.S. at 668, 94 S.Ct. at 1358, 39 L.Ed.2d at 675.

Even the "ancillary effect" principle recognized in *Edelman,* however, is unnecessary to prevent the imposition of the Eleventh Amendment bar in this case. Where the monetary damages sought against defendants would so clearly be paid out of local, or county funds rather than from the state treasury, the inquiry into defendants' rights under the Eleventh Amendment is at an end. Some courts in specific cases have held that other factors, such as the degree of control exercised by the state over the defendant, are relevant in determining whether the defendant is an "alter ego" of the state. *See, e. g., Fitzpatrick v. Bitzer,* 519 F.2d 559 (2d Cir. 1975), cert. granted, 423 U.S. 1031, 96 S.Ct. 561, 46 L.Ed.2d 404, 44 USLW 3358 (1975); *Wright v. Houston Independent School Dist.,* 393 F.Supp. 1149 (S.D.Tex.1975). In a case such as this one, however, where it appears that the money damages sought against the defendant would not result in any additional expenditure of public funds from the state treasury, the logical conclusion to be drawn from *Edelman* is that the protection of the Eleventh Amendment is unavailable notwithstanding other factors which might indicate state control over the defendant. That county funds would be used to satisfy any possible judgment is of no significance under the Eleventh Amendment; the Court in *Edelman* observed that since *Lincoln County v. Luning,* 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766 (1890) it has been clear that counties do not enjoy the immunity which the Eleventh Amendment affords the states. *See also Lytle v. Commissioners of Elections of Union County,* No. 75-1327 (4th Cir. Feb. 10, 1976). There is likewise no inconsistency in the fact that a county action may be a state action for Fourteenth Amendment purposes but the same county may not be a state defendant for purposes of the Eleventh Amendment. 415 U.S. at 667 n. 12, 94 S.Ct. at 1357, 39 L.Ed.2d at 675.

The relief which plaintiffs seek in this action would, if granted, result in a judgment against Richland County School Dis-

**650**

trict One and its expenditure of ·funds in satisfaction thereof. It is undisputed that defendant receives from the state a portion of the funds which it expends annually, and additional funds are also received from the federal government. The District's remaining revenues are derived from taxes levied for school purposes within Richland County.[2]

Expected payment of any possible judgment in this action from either present or future federal or local funds would not cause this action to run afoul of the Eleventh Amendment; therefore, the action must be barred only if it would have an adverse financial impact upon the public funds of South Carolina maintained in the state treasury. The financial relationship between the state and Richland District One, however, is such that plaintiffs' success in this action could not affect the amount of state funds flowing to the defendant in the form of "state aid."[3] State aid is provided to all the public schools by statute and consists of three and only three types. Section 21–252 obligates the state to pay the salaries of all teachers for a 185-day school year but the salaries are fixed and limited to the amounts specified in § 21–258. The state pays only that fixed amount and pays it only for the number of teachers to which a district is "entitled" under § 21–253. The district may provide, if it wishes,

salary supplements for teachers for whom state aid is paid and the entire salaries of teachers not entitled to state aid because the district has exceeded the number of teachers authorized by § 21–253.[4]

In addition to the payment of teacher salaries, the state is obligated by § 21–260 to provide each school district an annual allowance of $7.50 for each pupil for "supervision and overhead" and by § 21–261 to provide an annual allowance of $10.00 per pupil for "maintenance and operation." The manner in which these allowances are spent, however, is determined not by the state but by the districts themselves.

■ There are of course certain other benefits which local school districts or their teachers may derive from the state, such as assistance in providing textbooks, or inclusion of teachers in the state retirement system. The court is satisfied however, ·that none of these connections between Richland District One and the state, including the state aid program described above, is of such a nature that a money judgment entered against District One could have the adverse effect of increasing the outflow of public funds from the state treasury. Any such judgment would be paid from funds within the control of the defendant and the financial obligation of the state to District One, which is fixed by law, would not and

2. This breakdown of the derivation of defendants' funds of course excludes extraordinary sources of income such as gifts and bequests or profits from the sale or lease of school property authorized by S.C.Code Ann. § 21–238. In any event, such sources are local and clearly distinct from the state treasury and therefore of no effect in the consideration of possible Eleventh Amendment immunity. Likewise excluded are funds obtained from authorized local bond issues or loans since the ultimate sources of those funds will be local taxation or the aforementioned extraordinary sources of income. Plaintiffs' brief, citing as its source the State Department of Education, informs the court that Richland District No. 1 received the following funds from the indicated sources during two previous school years:

| | 1972–1973 | | 1973–1974 | |
|---|---|---|---|---|
| Local | 12,406,701 = | 43.5% | 13,209,803 = | 41% |
| State | 11,799,109 = | 41.4% | 13,229,731 = | 41% |
| Federal | 4,326,731 = | 15.1% | 5,570,134 = | 18% |
| Total | 28,532,541 = | 100 % | 32,009,668 = | 100% |

*Rankings,* 1973–1973/1973–1974, State Department of Education, Columbia, South Carolina.

3. The term state aid is employed in the title of Chapter 10 of Title 21 of the S.C.Code, § 21–251 et seq., to describe the state funds to which school districts are entitled by law. Plaintiffs contend that the very use of the term "aid" is indicative of the separate status of school districts and the state. This contention may or may not be valid; in any case, it is not the basis for the court's conclusion here.

4. Plaintiffs' brief reports a conversation with Roy Weeks, State Aid Director for the State Department of Education which indicates that in 1973–74, 295 of 1634 teachers in District One were "off-enrollment," *i. e.* that they received no state aid and that 282 of 1567 teachers were in that category in 1974–75.

could not be increased in order to satisfy such a judgment. Any necessary amounts which could not be drawn from normal operating revenues would be raised on the local level. A judgment against Richland County District One simply would not have the effect of a judgment rendered against the state.

The court is therefore compelled to conclude that this action is in no way barred by the provisions of the Eleventh Amendment. Since such is the case, defendants' motion to dismiss must be and is hereby denied. The remaining motions noted previously have not been heard by the court and the parties undoubtedly have not presented their positions as fully as they may wish. Therefore counsel for both parties shall have 15 days from the date of this order to present any additional memoranda concerning the remaining motions or, if they wish, to communicate to the court their desire for a hearing to present oral arguments on the issues involved.

AND IT IS SO ORDERED.