**Rosa TORRES et al., Plaintiffs-Appellees,**

**v.**

**Alice SACHS et al.,**
**Defendants-Appellants.**

**Raymond S. VELEZ et al.,**
**Plaintiffs-Appellees,**

**v.**

**Patrick CUNNINGHAM et al.,**
**Defendants-Appellants.**

**Juana LOPEZ et al., Plaintiffs-Appellees,**

**v.**

**David DINKINS et al.,**
**Defendants-Appellants.**

**Nos. 1033, 1034, Dockets 76–7002, 76–7072.**

United States Court of Appeals,
Second Circuit.

Argued May 14, 1976.
Decided June 25, 1976.

Francis Caputo, New York City (W. Bernard Richland, Corp. Counsel of the City of New York, New York City, L. Kevin Sheridan, New York City, of counsel), for defendants-appellants.

Herbert Teitelbaum, New York City (Oscar Garcia-Rivera, M. D. Taracido, Kenneth Kimerling, Richard J. Hiller, Puerto Rican Legal Defense & Education Fund, Inc., New York City, of counsel), for plaintiffs-appellees.

Before SMITH, MANSFIELD and VAN GRAAFEILAND, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

The municipal defendants appeal from an award by the United States District Court for the Southern District of New York, Charles E. Stewart, Jr., *Judge*, of $23,252 in attorneys' fees to successful plaintiffs in two voting rights class actions seeking bilingual school board and general election officials and materials. We find no error and affirm the judgment.

Appellants on this appeal attack neither the underlying voting rights judgment nor the entitlement of the successful plaintiffs to attorneys' fees. They question rather the measure of allowable fees. Essentially they contend that because publicly financed legal services organizations supply counsel, and tax supported governmental bodies bear the burden of appellants' costs, some measure of fees should be used less than the going rates for similar services received by privately employed counsel for work of comparable importance, extent and complexity.

There is support for such a discounting of the value of similar services, see *Souza v.*

*Travisono,* 512 F.2d 1137 (1st Cir. 1975), *vacated on other grounds,* 423 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29 (1975); *Gilpin v. Kansas State High School Activities Ass'n,* 377 F.Supp. 1233, 1253 (D.Kan.1974). The unanticipated burden on public treasuries on the one hand and the duty of the bar to provide services *pro bono publico* on the other are among the reasons given for reductions.

We disagree on two grounds. First, the statute and its legislative history make it quite plain that the Congress rejected any such limitation. Second, we consider that such voting rights enforcement by litigation, in common with other similar essential minority civil rights enforcement, is to be encouraged by reasonable fee awards rather than discouraged by requiring successful plaintiffs to bear litigation costs.

■ The Congress provided for attorneys' fees in § 402 of the 1975 extension of the Voting Rights Act of 1965, P.L. 94–73, 42 U.S.C. § 1973*l*(e).[1] The legislative history of this section leaves no question as to congressional intent in its enactment. The language of the Senate bill was substituted for the language of the House bill and adopted by the House. The Senate Report is persuasive.[2] The fees are to be measured by the same standards as in other complex federal litigation and are intended to be

---

1. 42 U.S.C. § 1973*l*(e) provides:

   In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

2. See, *e. g.,* the following excerpts:

   Section 402 allows a court, in its discretion, *to award attorneys' fees to a prevailing party* in suits to enforce the voting guarantees of the Fourteenth and Fifteenth amendments, and statutes enacted under those amendments. This section is similar to provisions in Titles II and VII of the Civil Rights Act of 1964, which prohibit discrimination in public *accommodations and employment,* and to Section 403 of this act (the coverage of which is described below). Such a provision is appropriate in voting rights cases because there, as in employment and public accommodations cases, and other civil rights cases, Congress depends heavily upon private citizens *to enforce the fundamental rights involved.* Fee awards are a necessary means of enabling private citizens to vindicate these Federal rights.

   It is intended that the standards for awarding fees under sections 402 and 403 be generally the same as under the fee provisions of the 1964 Civil Rights Act. *A party seeking to* enforce the rights protected by the Constitutional clause or statute under which fees are authorized by these sections, if successful, "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). . . .

   In several hearings held over a period of years, the Committee has found that fee awards are essential if the Constitutional requirements and Federal statutes to which sections 402 and 403 apply are to be fully enforced. We find that the effects of such fee awards are ancilliary (sic) and incident to securing compliance with these laws, and that fee awards are an integral part of the remedies necessary to obtain such compliance. Fee awards are therefore provided in cases covered by sections 402 and 403 in accordance with Congress' powers under, *inter alia,* the Fourteenth Amendment, Section 5. As with cases brought under 20 *U.S.C.* § 1617, the Emergency School Aid Act of 1972, defendants in these cases are frequently state or local bodies or state or local officials. In such cases it is intended that the attorneys' fees, like other items of costs, will be collected either from the official directly, from funds of his agency or under his control, or from the State or local government (whether or not the agency or government is a named party).

   It is intended that the amount of fees awarded under sections 402 and 403 be governed by the same standards which prevail in other types of equally complex Federal litigation, and not be reduced because the rights involved may be nonpecuniary in nature. *Stanford Daily v. Zurcher,* 64 F.R.D. 680 (N.D.Cal.1974); *Davis v. County of Los Angeles,* 8 E.P.D. ¶ 9444 (C.D.Cal.1974); *Swann v. Charlotte-Mecklenberg* [sic] *Board of Education,* 66 F.R.D. 483 (W.D.N.C., order entered Feb. 24, 1975).

   Section 403 allows a court, in its discretion, to award attorneys' fees to a prevailing party in suits to enforce the civil rights acts which Congress has passed since 1866. This section follows the language of section 402 of this Act, and of Titles II and VII of the 1964 Civil Rights Act. All of these acts depend heavily upon private enforcement, and fee awards are an essential remedy if private citizens are to have a meaningful opportunity to vindicate these important Congressional policies.

collectible from offending municipal officials and bodies. The Act is concededly applicable to cases pending at the time of its enactment under the principles of *Bradley v. School Board of City of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974).

Litigation to secure the law's protection has frequently depended on the exertions of organizations dedicated to the enforcement of the Civil Rights Acts. See *Tillman v. Wheaton-Haven Recreation Ass'n*, 517 F.2d 1141 (4th Cir. 1975). We agree with the courts which have held that the "allowable fees and expenses may not be reduced because [the prevailing party's] attorney was employed . . . by a civil rights organization . . . or because the attorney does not exact a fee." *Fairley v. Patterson*, 493 F.2d 598, 606 (5th Cir. 1974); *Tillman v. Wheaton-Haven Recreation Ass'n, supra.* Non-profit public interest law firms have been recognized as properly entitled to attorneys' fees, *Jordan v. Fusari*, 496 F.2d 646, 649 (2d Cir. 1974); *Brandenburger v.*

*Thompson*, 494 F.2d 885, 889 (9th Cir. 1974), and the receipt of such fees promotes their continued existence and service to the public in this field.

Application of the provision to furnish full recompense for the value of services in successful litigation helps assure the continued availability of the services to those most in need of assistance in translating the promise of the Act into actually functioning voting rights, often grudgingly yielded to minorities by those reluctant to give up or dilute political power or to impose on the majority necessary expenses of implementation.

■ Attorneys' fees are not awarded necessarily to punish for bad faith, but to recompense those who by helping to protect basic rights are thought to have served the public interest. A principal purpose of the legislation is to encourage people to seek judicial redress of unlawful discrimination.

In short, imposition of full attorneys' fees is a useful and needed tool of the court to

---

Courts have been instructed, since the passage of our first civil rights laws, to use the broadest and most effective remedies available to achieve the goals of these laws, and these remedies have included awards of attorneys' fees as costs. The Civil Rights Act of 1866 directed courts to use whatever combination of federal, state, and common law is most suitable to enforce civil rights. 42 U.S.C. § 1988. In 1870 Congress passed three separate provisions mandating counsel fee awards to victims of certain election law violations. Enforcement Act of 1870, 16 Stat. 140. One year after enacting that law, Congress directed that remedies provided in such laws should be available in all cases involving official violations of civil rights. Sec. 1, Ku Klux Klan Act of 1871 (predecessor of 42 U.S.C. § 1983).

In several recent civil rights laws, Congress has included the effective remedy of attorneys [sic] fees. Fee-shifting provisions have been successful in enabling vigorous enforcement of these laws. Before May 12, 1975, when the Supreme Court handed down its decision in *Alyeska Pipeline Service Co. v. Wilderness Society* [421 U.S. 240], 95 S.Ct. 1612 [44 L.Ed.2d 141] (1975), many lower Federal courts followed these Congressional policies and exercised their traditional equity powers to award attorneys' fees under earlier civil rights laws as well.

These pre-*Alyeska* decisions remedied a gap in the specific statutory provisions and restored an important historic remedy for civil rights violations. However, in *Alyeska*, the Supreme Court held that the federal courts did not have the power to grant fees to "private attorneys general," or private enforcers of civil rights laws, except under statutes whose language specifically authorizes such fee awards.

The *Alyeska* decision created an unexpected and anomalous gap in our civil rights laws whereby awards of fees are barred in the most fundamental civil rights cases. For instance, fees are now authorized in an employment discrimination suit under Title VII of the 1964 Civil Rights Act, but not in the same suit brought under 42 U.S.C. § 1981, which protects similar rights but involves fewer technical prerequisites to the filing of an action. Fees are allowed in a suit under Title II of the 1964 Act challenging discrimination in a private restaurant, but not in suits under 42 U.S.C. § 1983 redressing violations of the Federal Constitution or laws by officials who are sworn to uphold the laws.

Section 403, like section 402, provides the specific statutory authorization required by the court in *Alyeska*. . . .

U.S.Code Cong. & Admin.News (1975) at pp. 807–809 (footnotes omitted).

**14**

fully protect plaintiffs' rights as American citizens and voters, and we agree with the court's use of it in this case.

We find no merit in appellants' other claims.

Affirmed.