Dilip V. KULKARNI, Plaintiff,

v.

Ewald NYQUIST and Raymond Salman, Defendants.

Aase JACKSON, Plaintiff,

v.

Ewald NYQUIST and Raymond Salman, Defendants.

Nos. 76–CV–344, 76–CV–360.

United States District Court, N. D. New York.

June 3, 1977.

See also, D.C., 446 F.Supp. 1269.

Thomas R. Litwack, New York Civil Liberties Union, New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen. for State of N. Y., Albany, N. Y., for defendants; Robert D. McDougall, Jack W. Hoffman, Asst. Attys. Gen., Albany, N. Y., of counsel.

JAMES T. FOLEY, Chief Judge.

MEMORANDUM–DECISION and ORDER

By an earlier Memorandum-Decision and Order of this Court dated January 5, 1977, Sections 7206.1(6) and 6534(6) of the New York Education Law were held to contravene the Equal Protection Clause of the Fourteenth Amendment. At that time, I further enjoined the named defendants herein from implementing or enforcing these said provisions which required United States citizenship or a declaration of intent to obtain United States citizenship as a condition to professional licensure for their respective professions. *Kulkarni v. Nyquist,* 76–CV–344, 446 F.Supp. 1269 (N.D. N.Y., filed Jan. 5, 1977); *Jackson v. Nyquist,* 76–CV–360, 446 F.Supp. 1269 (N.D. N.Y., filed Jan. 5, 1977). A Notice of Appeal was filed, but by stipulation the motion for a stay was withdrawn, and subsequently the Court of Appeals, Second Circuit, dismissed the appeal.

Now before the Court is a motion by Thomas R. Litwack, counsel for the prevailing parties, and Associate Staff Attorney for the New York Civil Liberties Union, seeking an award of attorney's fees pursuant to the Civil Rights Attorney's Fees Awards Act of 1976. 42 U.S.C. § 1988, as amended, eff. October 19, 1976.

This is a matter of first impression in this Court; and, given the recent effective date of this legislation—October 19, 1976—there is a scarcity of case law thereunder. *See e. g. Wade v. Mississippi Co-Op Extension Service,* 424 F.Supp. 1242 (N.D.Miss.1976); *see Davis v. Reed,* 72 F.R.D. 644 (N.D.Miss. 1976).

Nevertheless, the parties have raised and briefed several issues which the Court will consider herein:

(1) does the Civil Rights Attorney's Fees Awards Act of 1976 apply to cases pendente lite;

(2) does the Eleventh Amendment bar an award of attorney's fees; and,

(3) is a legal services organization entitled to an award of attorney's fees under the Civil Rights Attorney's Fees Awards Act of 1976; and, if so, what is a "reasonable" award in this situation.

*Application of 42 U.S.C. § 1988, as amended, to Cases Pendente Lite*

The complaints in *Kulkarni* and *Jackson* were filed on August 24 and September 7, 1976, respectively. By stipulation of counsel and by order of this court, these actions were consolidated on October 14, 1976. The statute, Section 1988, as amended, became effective on October 19, 1976. It is the defendants' contention that since these cases were commenced prior to the effective date of Section 1988, as amended, the applicable law was the Supreme Court's decision in *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), which held that attorney's fees were not recoverable in "private attorney general" type litigation absent congressional authorization. For reasons hereafter stated it is my judgment that defendants' contentions in this regard are without merit.

The amended pertinent portion of Section 1988 provides:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title, title IX of Public Law 92–318, or in any civil action or proceeding by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, *the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs* (emphasis supplied).

As a threshold matter, it seems clear that the purpose of this statute is to provide the necessary explicit congressional authorization contemplated by *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), for the grant of attorney's fees under the various civil rights statutes. This conclusion seems incontrovertible, being reinforced by an examination of the statute's documented legislative history:

The purpose of this amendment is to remedy anomalous gaps in our civil rights laws created by the United States Supreme Court's recent decision in *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240 [95 S.Ct. 1612, 44 L.Ed.2d 141] (1975) and to achieve consistency in our civil rights laws. The purpose and effect . . . are simple—it is designed to allow courts to provide the familiar remedy of reasonable counsel fees to prevailing parties in suits to enforce the civil rights acts which Congress has passed since 1866. S.Rep.No.94–1011, U.S.Code Cong. & Admin.News 1976, pp. 5909–10.

More importantly, however, the Civil Rights Attorney's Fees Awards Act of 1976 adopts the *Newman-Northcross* rationale that private parties who initiate civil rights litigation are "private attorney generals" vindicating a public policy to which Congress attached the highest priority. *See Northcross v. Memphis Board of Education,* 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973); *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). *See also* U.S.Code Cong. & Admin.News 1976, pp. 5910–12.

The consequences of this development are twofold. First, it overcomes the effects of the "American rule," *see Alyeska Pipeline Co. v. Wilderness Society, supra* 421 U.S. at 247, 95 S.Ct. 1612, by providing that the successful plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enterprises, Inc., supra* 390 U.S. at 402, 88 S.Ct. at 966; U.S.Code Cong. & Admin. News 1976, p. 5912.

Secondly, the similarity of language in Section 1988, as amended, compared with that found in other provisions of the civil rights acts which permit the recovery of attorney's fees—42 U.S.C. §§ 1973*l*(e), 2000a–3(b), 2000e–5(k), 3612(c), and 20 U.S.C. § 1617—"is, of course, a strong indication that [these statutes] should be interpreted *pari passu.*" *Northcross v. Memphis Board of Education, supra* 412 U.S. at 428, 93 S.Ct. at 2202.

In order to resolve the question of whether attorney's fees under Section 1988, as amended, may be awarded *pendente lite,* the inquiry begins with the leading case of *Bradley v. School Board of the City of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974).

*Bradley* was a protracted school desegregation case, initiated in 1961, and for which attorney's fees were awarded by the district court prior to the enactment of 20 U.S.C. § 1617. The Court of Appeals, Fourth Circuit, held, in part, that because of the absence of pending or appealable orders both when the district court made its award, and, when the statute became effective, Section 1617 could not sustain the fee award.

The Supreme Court, in vacating and remanding the case, announced the following rule:

We anchor our holding in this case on the principle that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary. 416 U.S. at 711, 94 S.Ct. at 2016. *See Thorpe v. Housing Authority of the City of Durham,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); *United States v. Schooner Peggy,* 1 Cranch (5 U.S.) 103, 110, 2 L.Ed. 49 (1801).

Relying on *Thorpe,* the *Bradley* Court also rejected the contention that "a change in the law is to be given effect in a pending case only where that is the clear and stated intention of the legislature." 416 U.S. at 715, 94 S.Ct. at 2018. In any event, the legislative history of § 1988, as amended,

provides explicit support for the application of the statute to cases pending at the time of its effective date. It was the Senate bill which was finally enacted; consequently, the Senate Report accompanying it is persuasive:

In appropriate circumstances, counsel fees under S. 2278 may be awarded pendente lite. *See Bradley v. School Board of the City of Richmond,* 416 U.S. 696 [94 S.Ct. 2006, 40 L.Ed.2d 476] (1974). S.Rep. No.94–1011, U.S.Code Cong. & Admin. News 1976, p. 5912.

■ Thus, having disposed of the question of statutory purpose, the question of "manifest injustice" remains to be considered. *Bradley,* again, provides the standard:

The concerns expressed by the Court in *Schooner Peggy* and in *Thorpe* relative to the possible working of an injustice center upon (a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights. 416 U.S. at 717, 94 S.Ct. at 2019.

In terms of the nature and identity of the parties in this case, they consist, on the one hand, of two aliens whose constitutional right to pursue their lawful professions free of the burdens of an unlawful licensing scheme have been vindicated by this litigation; and, on the other, the Commissioner of the New York State Department of Education and the Director of the New York State Division of Professional Licensing Services. In my judgment, the Supreme Court's discussion of this factor in *Bradley,* 416 U.S. at 718–19, 94 S.Ct. 2006, may be repeated and relied upon here.

Thus, there is the disparity in the respective ability of the parties to protect their interests. But for the fact that plaintiffs were fortunate enough to acquire competent counsel from a non-profit legal services organization to advance their claims, they were confronted by the legal staff and formidable resources of New York State's legal department. Moreover, plaintiffs rendered an invaluable public service by bring-

ing the New York Education Law into compliance with the constitutional mandates of the Fourteenth Amendment.

Secondly, in terms of the nature of the rights of the respective parties, it is my judgment that application of Section 1988, as amended, would not infringe or deprive the defendants of a matured or unconditional right. 416 U.S. at 720, 94 S.Ct. 2006. This seems self-evident, for it cannot be claimed that the defendants had any right to the funds allocated to their respective departments from the public treasury.

Finally, in terms of the impact which Section 1988, as amended, will have upon the rights of the parties, the *Bradley* Court spoke in terms of "the possibility that new and unanticipated obligations may be imposed upon a party without notice or an opportunity to be heard." 416 U.S. at 720, 94 S.Ct. at 2021.

In this matter, it is my judgment that there are no increased burdens upon these defendants because this statute does not alter the defendants' responsibility for administering the New York State Education Law and its licensing procedures in a nondiscriminatory manner. Moreover, there is no substantive change in the obligation of the parties, since, even under *Alyeska*, the defendants obligation to pay attorney's fees was at least potentially foreseeable if they "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *F. D. Rich Co., Inc. v. United States ex rel. Industrial Lumber Co., Inc.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974). So viewed, Section 1988, as amended, merely serves as an additional source to the potential obligation to pay attorney's fees. 416 U.S. at 721, 94 S.Ct. 2006.

In sum, upon consideration of the legislative history, the nature of the rights, the parties, and the impact of Section 1988, as amended, it is my conclusion that the application of that statute here would not cause any "manifest injustice" so as to compel a departure from the settled doctrine that a court shall apply the law in effect at the time of its decision.

This Court finds additional support for the above conclusion in a recent decision of the Court of Appeals, Second Circuit, *Torres v. Sachs*, 538 F.2d 10, 12–13 (2d Cir. 1976), in which the principles of *Bradley* were extended to the 1975 amendment of the Voting Rights Act of 1965 by providing the prevailing party with the opportunity to acquire attorney's fees. 42 U.S.C. § 1973*l* (e). The *Torres* Court found the legislative history of Section 1973*l*(e) to be persuasive. *Id.* at 12–13, n. 2. The significance of that finding, for purposes of this litigation, is the *striking similarity* of language found in the legislative histories of Section 1973*l*(e) (*see* U.S.Code Cong. & Admin.News 1975, pp. 807–10) and Section 1988, as amended (*see* U.S.Code Cong. & Admin.News 1976, pp. 5908–13).

■ Their legislative histories are parallel in several important respects: (1) the adoption of the *Newman-Northcross* rationale; (2) the application of the statutes *pendente lite*; and (3) the necessity to overcome anomalous gaps in the enforcement of the civil rights acts caused by the *Alyeska* decision. Given this parallel legislative history and the identity of statutory language, which mandates that these statutes be interpreted equally, in my judgment, the conclusion necessarily follows that Section 1988, as amended, is applicable to cases initiated before its effective date.

To be thorough, to date, at least one other district court has reached this conclusion. *See Wade v. Mississippi Co-Op Extension Service, supra* at 1252–53.

*The Eleventh Amendment*

The defendants rely upon the principles of *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), urging that since any award of attorney's fees herein would be paid out of public funds, such a monetary claim against the State is barred by the Eleventh Amendment. In my judgment, defendants' reliance upon *Edelman* is misplaced.

In fact, it appears that defendants' contentions may be disposed of upon either or both of the following grounds: (1) Con-

gress' plenary power under Section 5 of the Fourteenth Amendment; and (2) the "ancillary effect" which an award of attorney's fees has upon the State treasury.

In terms of congressional power under Section 5 of the Fourteenth Amendment, this Court's analysis begins with the recent decision of the United States Supreme Court in *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).

In *Bitzer*, the Court held that Congress has the power to authorize an award of money damages in a private action against the State as a means of enforcing the substantive guarantees of the Fourteenth Amendment in spite of the shield of immunity otherwise afforded by the Eleventh Amendment. The Court held:

> When Congress acts pursuant to § 5 [of the Fourteenth Amendment], not only is it exercising legislative authority that is plenary within the terms of the constitutional grant, it is exercising that authority under one section of a constitutional Amendment whose other sections by their own terms embody limitations on state authority. We think that Congress may in determining what is 'appropriate legislation' for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against states or state officials which are constitutionally impermissible in other contexts. 427 U.S. at 456, 96 S.Ct. at 2671.

Significantly, in Part III of the *Bitzer* decision, the Supreme Court also had before it the Court of Appeals' conclusion that an award of attorney's fees, under *Edelman*, would have only an "ancillary effect" on the state treasury. The Court refused to address that question, since:

> given the express congressional authority for such an award in a case brought under Title VII [42 U.S.C. § 2000e–5(k)], it follows necessarily from our holding in No. 75–251 that Congress' exercise of power in this respect is also not barred by the Eleventh Amendment. 427 U.S. at 457, 96 S.Ct. at 2672.

An examination of the Senate Report which accompanied the Civil Rights Attor-

ney's Fees Awards Act of 1976 leaves no room for doubt as to the congressional intent and underscores the fact that *Bitzer* is dispositive of the issue herein. As stated previously, it was the Senate bill which was passed in lieu of the House bill. The Senate Report provides in pertinent part:

> We find that the effects of such fee awards are ancillary and incident to securing compliance with these laws [the civil rights acts], and that fee awards are an integral part of the remedies necessary to obtain such compliance. *Fee awards are therefore provided in cases covered by S. 2278 in accordance with Congress' powers under, inter alia, the Fourteenth Amendment, Section 5 . . . [D]efendants in these cases are often State or local bodies or State or local officials. In such cases, it is intended that the attorney's fees, like other items of costs, will be collected either directly from the official, in his official capacity, from funds of his agency or under his control, or from the State or local government (whether or not the agency or government is a named party).* Senate Rep.No.94–1011, U.S.Code Cong. & Admin.News 1976, p. 5913 (emphasis supplied).

In sum, given this persuasive indication of legislative intent and the clear language of *Bitzer*, it is my judgment that the sovereign immunity reserved to the States under the Eleventh Amendment is no bar to an action for the recovery of attorney's fees under 42 U.S.C. § 1988, as amended.

The second, or alternative ground, upon which an award of attorney's fees may be upheld in this case finds its origin in *Edelman v. Jordan, supra* 415 U.S. at 667–68, 94 S.Ct. at 1358, wherein the Supreme Court wrote as follows:

> But the fiscal consequences to state treasuries in these cases were the necessary result of compliance with decrees which by their terms were prospective in nature. State officials, in order to shape their official conduct to the mandate of the Court's decrees, would more likely have to spend money from the state trea-

sury than if they had been left free to pursue their previous course of conduct. Such an ancillary effect on the state treasury is a permissible and often inevitable consequence of the principle announced in *Ex Parte Young*, [209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714] *supra.*

Several courts, notably the Court of Appeals, Second Circuit, have relied upon this language to hold that an award of attorney's fees is proper when incidental to a decree which is prospective in nature. *See Fitzpatrick v. Bitzer*, 519 F.2d 559 (2d Cir. 1975), *rev'd on other grounds*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); *Class v. Norton*, 505 F.2d 123 (2d Cir. 1974); *Jordan v. Fusari*, 496 F.2d 646 (2d Cir. 1974); *Hupart v. Board of Higher Education of City of New York*, 420 F.Supp. 1087 (S.D.N. Y.1976).

■ Thus, to the extent that an award of attorney's fees accompanies a decree for prospective relief, such as the injunction which issued herein, such an award has only an "ancillary effect" upon the State's treasury, and consequently, is not barred by the Eleventh Amendment.

■ Finally, in *Class v. Norton, supra* at 126–28, the Court examined the appellant's liability for fees and costs based upon his official as distinguished from his individual capacity. *See King v. Carey*, 405 F.Supp. 41, 43 (W.D.N.Y.1975). No such distinction has been raised by the parties herein; however, this fact need not detain this Court, because it has previously been determined, by reference to the legislative history of the amendment to Section 1988, that any award against the defendants would arise in their official capacity. In that vein, it is sufficient to note that the defendants herein have been sued, *inter alia*, in their official capacities. Moreover, to the extend that 42 U.S.C. § 1988, as amended, is based upon the concept of the "private attorney general," this Court need not concern itself with bad faith and its concomitant punitive rationale for shifting the costs of litigation. *See e. g. Hall v. Cole*, 412 U.S. 1, 5, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973).

*Awards to Legal Services Organizations*

■ It appears to be settled law in this Circuit that nonprofit legal services organizations are entitled to an award of attorney's fees in appropriate cases. *See Equal Employment Opportunity Commission v. Enterprise Association Steamfitters*, 542 F.2d 579, 592–3 (2d Cir. 1976), *cert. denied*, 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977); *Torres v. Sachs, supra; Jordan v. Fusari*, 496 F.2d 646, 649 (2d Cir. 1974); *Richardson v. Civil Service Commission of State of New York*, 420 F.Supp. 64 (S.D.N. Y.1976).

Additionally, there is nothing in the legislative history of 42 U.S.C. § 1988, as amended, to suggest that legal services organizations are barred from recovery under this statute. Congress' concern was to ensure an award of:

fees which are adequate to attract competent counsel, but which do not produce windfalls to attorneys. In computing the fee, counsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee paying client, "for all time reasonably expended on a matter." U.S.Code Cong. & Admin.News 1976, p. 5913 (citations omitted).

■ Given this legislative history, and the instruction of *Torres v. Sachs, supra* ; namely, that an award may not be reduced merely because the prevailing party's attorney is employed by a legal services organization or did not exact a fee, this Court will now determine what is a reasonable fee for the services rendered herein.

Plaintiffs' counsel has submitted an application and affidavit in support of his motion for an award of attorney's fees. Accompanying these papers is a schedule of services for the months of August 1976 to March 1977, totaling 74.75 hours. Counsel's papers further allege that the prevailing rate for services of this kind is $60 per hour, resulting in a total fee of $4,485.

As a threshold matter, I am satisfied that there has been full compliance with the stringent record keeping requirements mandated by *City of Detroit v. Grinnell Corp.*,

495 F.2d 448 (2d Cir. 1974). *See Firebird Society, etc. v. Board of Fire Commissioners,* 556 F.2d 642, 643 (2d Cir. 1977); *Equal Employment Opportunity Commission v. Enterprise Association Steamfitters, supra* at 592, n. 10.

And, because I further find that the facts to be weighed in regard to the nature and extent of services rendered are not in dispute, no evidentiary hearing on the matter of fees is required. *See City of Detroit v. Grinnell Corp., supra* at 472. Defendants, however, allege that plaintiffs' counsel, Thomas R. Litwack, did not render legal services in these cases until some time in October 1976, because different counsel is named upon the *Kulkarni* Summons. This fact, however, is inexplicable in light of the remaining record which discloses Mr. Litwack's intimate involvement in these cases since August 1976. This slight disparity, therefore, does not necessitate an evidentiary hearing.

In arriving at a reasonable award herein, this Court will also be guided by the factors and reasoning in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974). I find the following language particularly persuasive:

> To put these guidelines into perspective and as a caveat to their application, courts must remember that they do not have a mandate . . . to make the prevailing counsel rich. Concomitantly, the Section [42 U.S.C. § 2000e–5(k)] should not be implemented in a manner to make the private attorney general's position so lucrative as to ridicule the public attorney general. The statute was not passed for the benefit of attorneys but to enable litigants to obtain competent counsel worthy of a contest with the caliber of counsel available to their opposition and to fairly place the economic burden of . . . litigation. *Id.* at 719.

*See also Torres v. Sachs, supra* at 13–14.

Therefore, mindful of this language, the legislative history of Section 1988, as amended, and a consideration of the factors enumerated in *Johnson,* it is my judgment that a fee of $40 per hour is a fair and reasonable sum given the importance, extent and complexity of the work performed.

Furthermore, it is my judgment that the total award must be computed without consideration of the 15 hours attributable to the preparation of the affidavit and memorandum in support of this motion for attorney's fees since this particular service cannot fairly and accurately be said to have been in furtherance of the basic rights of the plaintiffs.

So viewed, plaintiffs' counsel are entitled to an award of attorney's fees in the sum of $2,390.00, the sum equal to $40 per hour times 59.75 hours. Therefore, the application is hereby granted to that extent and attorney's fees are hereby awarded to plaintiffs' counsel in the amount of $2,390.00.

It is so Ordered.