OPINION OF THE COURT
David O. Boehm, J.
This motion for attorney’s fees is brought by the plaintiffs pursuant to section 1988 of title 42 of the United States Code following an action prosecuted under the Civil Rights Act of 1871 (US Code, tit 42, § 1983). Section 1988, known as the Civil Rights Attorney’s Fees Awards Act of 1976, provides that a court may award a reasonable attorney’s fee to a party who has prevailed in designated civil rights actions, including ones brought under section 1983.
In prior proceedings, the plaintiffs obtained an order determining that certain named Monroe County Legisla *783 tors, the Monroe County Manager and the Director of the Monroe County Department of Social Services had unconstitutionally disallowed them welfare benefits. In the same order, dated October 20, 1978, Justice Joseph G. Fritsch of this court granted the plaintiffs’ motions for class certification, pursuant to CPLR article 9, and for summary judgment in their causes of action for declaratory and injunctive relief against all defendants in their official capacities. The sufficiency of an additional claim for punitive damages against the county legislators was sustained over a cross motion for dismissal of the plaintiffs’ complaint.
On November 16, 1979 the Appellate Division affirmed as to class certification and declaratory and injunctive relief, but reversed as to the punitive damage claim, ruling that under the circumstances the defendant legislators were absolutely immune from liability for damage claims under section 1983 (Felder v Foster, 71 AD2d 71). On February 5, 1980, an appeal by the plaintiffs to the Court of Appeals was dismissed on the ground that the order appealed from was not a final order (49 NY2d 800).
Throughout the course of the litigation the plaintiffs have been represented by staff attorneys of the Monroe County Legal Assistance Corporation (hereinafter Legal Assistance). The amount of attorneys’ fees sought is $10,222.75.
Defendants legislators and County Manager resist any grant of attorneys’ fees, arguing that it is neither warranted nor appropriate and that even if such an award were properly allowable the amount sought is both excessive and inadequately substantiated. Defendant Reed (Director of the Monroe County Department of Social Services) opposes the motion on similar grounds and, in addition, has interposed a cross motion for an order relieving him from liability.
This court has jurisdiction to entertain all proceedings brought under sections 1983 and 1988 of title 42 of the United States Code (Maine v Thiboutot, 448 US 1; Young v Toia, 66 AD2d 377, opp dsmd 46 NY2d 1076; Matter of Bess v Toia, 66 AD2d 844), and must exercise that juris *784 diction when such a proceeding is properly before it (Testa v Katt, 330 US 386).
A threshold issue facing the court is whether the plaintiffs’ section 1988 application, made nine and one-half months after dismissal of the last appeal of the section 1983 claim, is time barred. The defendants urge that dismissal here is required under the recent case of White v New Hampshire Dept, of Employment Security (629 F2d 697), which dismissed as untimely a motion for section 1988 attorney’s fees initiated four and one-half months after entry of final judgment in the plaintiff’s favor in a section 1983 claim.
In assessing this particular argument we acknowledge that where, as here, an action is based solely upon Federal statute, it must be determined in accordance with Federal law (Teamsters Local v Lucas Flour Co., 369 US 95; Brown v Western Ry. of Alabama, 338 US 294). Moreover, although this court may generally apply New York practice and procedure (Minneapolis & St. Louis R.R. Co. v Bombolis, 241 US 211), State rules must defer to Federal law when the local practice would prevent uniform application of a Federal statute (Teamsters Local v Lucas Flour Co., supra).
The First Circuit Court of Appeals held in White v New Hampshire Dept, of Employment Security (supra), that permitting a section 1988 motion for attorney’s fees after the underlying civil rights action had been reduced to final judgment, and after the time to reopen the judgment had elapsed, would violate principles of Federal law that favor finality of judgments. White does not, as plaintiffs suggest, merely construe subdivision (e) of rule 59 of the Federal Rules of Civil Procedure. Rather, it holds'that the attorney’s fee award authorized by section 1988 is a remedy made available to certain civil rights litigants which, like any other remedy, may be lost if not included in the final judgment. As the court pointed out: “The ultimate award of fees is, in our view, clearly a part of the overall relief sought and granted during the course of a particular civil rights action. Not only will it often be more economical of a court’s time to resolve fee requests prior to entry of judgment rather than having them surface for the first *785 time weeks or even months thereafter, but so doing ensures certainty as to the scope and finality of the judgment *** and at the same time reflects and re-enforces the strong policy against piecemeal appeals.” (629 F2d, at p 704.)
However, we are not compelled to resolve this two-fold question of whether White v New Hampshire Dept, of Employment Security (supra), represents the current Federal law[1] and, if so, the effect it should be given in a New York court. Both questions presuppose the existence of a final judgment on the merits. But, the action upon which this application is based has been expressly deemed nonfinal by the Court of Appeals (49 NY2d 800). Accordingly, resolution of this important procedural question is not required in this motion.
The defendants urge that the issue of attorney’s fees is a matter requiring determination by “the trial court who heard the matter in the first instance.” This case never went to trial but has, up to the present, been determined on motions before three different Justices,[2] and by a panel of the Appellate Division. The defendants therefore argue “that this matter should be referred to each judge who heard this matter originally, for each judge to make a determination of whether to award attorney’s fees for the particular aspect of the case before him.”
In support, defendants legislators cite language from Johnson v Georgia Highway Express (488 F2d 714, 718) to the effect that a Federal statutory attorney’s fee award should reflect the Trial Judge’s observations of the attorney’s work product, preparation and general ability before *786 the court. From this they urge that in the absence of a trial, an award of attorney’s fees must be passed upon in piecemeal fashion by each participating Judge.
However, I do not read Johnson as requiring such individual referrals. At issue there was the adequacy of an attorney’s fee award granted by a Federal District Judge rather than his authority to grant the award. While it is true that the opinion speaks of the responsibilities of the Trial Judge in making the fee award, that reference may be explained by the fact that the Circuit Court was reviewing the judgment of a Federal District Court which, as a matter of procedure, generally refers all matters in a case to the same Judge (see, e.g., Rules of US Dist Ct, N Ga, rule 51.32).
In contrast, New York practice provides that a motion made in an action in the Supreme Court may be determined by any motion term “in the judicial district where the action is triable or in a county adjoining the county where the action is triable.” (CPLR 2212.) Moreover, section 147-a of the Judiciary Law states: “Any justice of the supreme court has power to hold a special or trial term of the supreme court in any county for the whole or any portion of the term, and to act upon any business which regularly comes before the term in which he is sitting, except where he is personally disqualified” (emphasis added).
That portion of the Civil Rights Attorney’s Fees Awards Act that is relevant to this controversy provides: “In any action or proceeding to enforce a provision of section * * * 1983 *** of this title * * * the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney’s fee as part of the costs.” (US Code, tit 42, § 1988.) Neither section 1983 nor section 1988 defines the word “court” or prescribes any particular procedure by which its provisions are to be implemented. Likewise, I am aware of no case or legislative document indicating that the word “court” in section 1988 is in any sense a word of art to be construed as meaning “Trial Judge” in every instance. As previously noted, the present case never went to trial but was determined entirely upon *787 pleadings, affidavits and legal argument. Under the circumstances, I find that my hearing of this application frustrates neither the letter nor the spirit of the Attorney’s Fees Awards Act, and accords with New York’s procedures for the orderly administration of justice.
Defendants further contend that because Legal Assistance was without authority to represent the plaintiffs in this matter, it may not be awarded attorney’s fees. Legal Assistance, by its peculiar organizational nature, is subject concurrently to the Legal Services Corporation Act (US Code, tit 42, § 2996) and the regulations promulgated thereunder, section 201 of New York’s Not-for-Profit Corporation Law, and an enabling order issued to it by the Appellate Division as required by subdivision 5 of section 495 of the Judiciary Law. The defendants contend that the statutes and, perhaps, the order prohibit Legal Assistance from accepting any case which holds the prospect of generating a fee. Whatever the merits of this argument may be they need not be addressed because the defendants are without standing to raise it in this proceeding.
Looking first to the Legal Services Corporation Act, we note that the very statute upon which the defendants rely deprives them of standing to raise the argument. Section 2996e (subd [b], par [1], cl [B]) of title 42 of the United States Code provides: “No question of whether representation is authorized under this subchapter, or the rules, regulations or guidelines promulgated pursuant to this subchapter shall be considered in, or affect the final disposition of, any proceeding in which a person is represented by a recipient [defined to include Legal Services] or an employee of a recipient. A litigant in such a proceeding may refer any such question to the [parent Legal Services] Corporation which shall review and dispose of the question promptly and take appropriate action”. The regulations issued under the statute establish an administrative procedure for enforcing compliance with the restraints imposed by the act. The stated purpose of the regulations is “to insure uniform and consistent interpretation and application of the Act, and to prevent a question of whether the Act has been violated from becoming an ancillary issue in any case undertaken by a recipient”. *788 (45 CFR 1618.1). The legislative history of the statute is in accord with this stated purpose (see 1977 US Code Cong & Admin News, vol 3, p 4503, House Report No. 95-310). Having chosen not to pursue the administrative remedy available to them, the defendants are precluded here from asserting as a bar any fee-generating guidelines that Legal Assistance may or may not have transgressed (Dennis v Chang, 611 F2d 1302; Anderson v Redman, 474 F Supp 511).
The defendants’ reliance upon fee-generation restrictions that may be imposed upon Legal Assistance by State law is equally misplaced. Under circumstances very similar to these the Second Department held that litigants in the posture of the defendants here are without standing to assert violations of State limitations upon a legal service organization’s corporate powers (Chao v Chin, 47 AD2d 941; see, also, Strongwell, Inc. v Mungin, 67 Misc 2d 731).
The defendants further argue that the plaintiffs may not recover attorney’s fees because the ligitation was unnecessary and, in fact, duplicative. In his affidavit, the New York State Commissioner of Social Services states that shortly before this action was commenced his department had begun to take steps to curtail the very activity that was held in Felder v Foster (71 AD2d 71, opp dsmd 49 NY2d 800, supra).
While such a charge may be a relevant consideration, there is nothing in the language of section 1988 of title 42 of the United States Code that requires, as a prerequisite to an award under the act, a finding that the litigation was necessary (Keyes v School Dist. No. 1, Denver, Colo., 439 F Supp 393, 401). Although the courts have read a necessity requirement into the statutory mandate that fees are available only to a “prevailing” party, the test is not a strict one. The general rule seems to require only a showing of minimum causality between a plaintiff’s lawsuit and achievement of the remedy sought (Nadeau v Helgemoe, 581 F2d 275; Bush v Bays, 463 F Supp 59).
Here, the commissioner admits that.his department, upon learning of the commencement of this lawsuit, suspended the limited legal activity it had undertaken in *789 order to await the resolution of the litigation. Nor is there any indication that these defendants had at any time volunteered to repeal or ignore County Resolution No. 440 which brought on the suit. It cannot be seriously contended, therefore, that the action instituted by these plaintiffs was “completely superfluous in achieving the improvements undertaken by defendants on plaintiffs’ behalf.” (Nadeau v Helgemoe, supra, p 281.)
I find nothing in the remainder of the defendants’ objections that requires denial of the plaintiffs’ application as a matter of law. While it is true that defendants legislators are personally immune from money damage claims for actions taken in their legislative capacity (Felder v Foster, 71 AD2d 71, 76, opp dsmd 49 NY2d 800, supra), that immunity, under the present circumstances, does not preclude an award of attorney’s fees against them in their official capacity[3] (cf. Hutto v Finney, 437 US 678). Nor is an award precluded for want of a finding of bad faith (Hutto v Finney, supra).
Defendant Reed individually seeks to escape liability for attorney’s fees on the grounds that his part in the conduct found to be unconstitutional was not an active one and that the offending county resolution contained a clause that expressly held him harmless from liability for carrying out its mandate. However, the Appellate Division rejected this argument in its affirmance of the lower court’s determination that all defendants, including Reed, violated defendants’ constitutional rights.
There is, however, a legitimate argument as to the extent to which these plaintiffs may be characterized as “prevailing parties” for purposes of a section 1988 award. For example, the defendants legislators urge that Legal *790 Assistance may not recover attorney’s fees for the work done or time spent in which an award of punitive damages was sought because, as to that, the plaintiffs did not prevail. Nor should a fee be granted, they argue, for work done to achieve class certification because the injunctive and declaratory relief awarded would have inured to the benefit of everyone, without the necessity of a class action. The only purpose to be served by class certification, defendants assert, was the pursuit on behalf of the class of punitive damages. Therefore, defendants conclude, the efforts of the plaintiffs’ attorneys in securing class certification must be viewed solely as work done in an area where they did not prevail.
The validity of the defendants’ position is not self-evident from the statutory language of section 1988, which speaks of prevailing “parties” and not of prevailing “issues”. The question is admittedly an open one, and there are Federal courts that have reached the conclusion which the defendants urge here (see, e.g., Hughes v Repko, 578 F2d 483; Familias Unidas v Briscoe, 619 F2d 391). Other Federal courts, however, have rejected the argument as contrary to Congressional intent (see, e.g., Northcross v Board of Educ., 611 F2d 624, cert den 447 US 911; Brown v Bathke, 588 F2d 634). The United States Supreme Court has not as yet spoken on the point, nor does it appear that any New York court has addressed the matter.
Fortunately, there is some guidance from the Senate report that accompanied the bill which became the Attorney’s Fees Awards Act, as it discusses the standards which are to govern such awards (1976 US Code Cong & Admin News, vol 5, p 5908, Senate Report No. 94-1011).
The relevant portion of the report provides that the amount of fees to be awarded under section 1988 is to be governed by the same standards which govern in other types of equally complex Federal litigation. It cites three cases in which “[t]he appropriate standards * * * are correctly applied” (1976 US Code Cong & Admin News, vol 5, p 5913). In two of these cases, Davis v County of Los Angeles (8 EPD par 9444) and Stanford Daily v Zurcher (64 FRD 680, affd 550 F2d 464, revd on other grounds 434 *791 US 816), the courts specifically addressed the question now before me and both held that legal effort expended as to an issue ultimately lost at trial was, nevertheless, to be compensated unless the unsuccessful claim was clearly without merit when brought.
This approach finds additional support elsewhere in the Senate report which says: “In computing the fee, counsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, Tor all time reasonably expended on a matter.’ ” (1976 US Code Cong & Admin News, vol 5, p 5913.) As the Circuit Court of Appeals in Northcross v Board of Educ., 611 F2d 624, 636, cert den 447 US 911, supra) pointed out: “[w]e know of no ‘traditional’ method of billing whereby an attorney offers a discount based upon his or her failure to prevail on ‘issues or parts of issues.’ ”
Accordingly, I find the controlling rule to be that so long as a party has substantially prevailed on the merits, as the plaintiffs here have done, compensation for time spent on unsuccessful research or litigation should be allowed unless the positions asserted were clearly merit-less, frivolous or made in bad faith.
As to the plaintiffs’ action for punitive damages, it would seem that the claim was, at least, a debatable one when this action was commenced in 1976. It would also seem that such a claim probably lost vitality, at least under Federal law, on March 5, 1979 when the United States Supreme Court decided Lake Country Estates v Tahoe Planning Agency (440 US 391; see Felder v Foster, 71 AD2d 71, 76, supra). That being the case, then any work performed in furtherance of the punitive damage claim after that date would appear to have been unreasonably undertaken.
However, because I am of the view that an evidentiary hearing should be held to determine the reasonable fee in this case, I am not compelled to decide what efforts, if any, in pursuit of punitive damages were unreasonable and therefore noncompensable. Of course, as to defendants Reed and Morin there would be no award for work done with respect to punitive damages since no such claim was made against them.
*792 Nor do I decide here whether the work done in obtaining class certification is compensable. In passing, however, it would seem that the only utility of a class action in this case was to assist in the pursuit of punitive damages. If this be so, then the time spent in obtaining class certification should necessarily be measured as to reasonableness along with the efforts to secure punitive damages.
The general rule is that a prevailing plaintiff should ordinarily recover an attorney’s fee unless special circumstances would render an award unjust (Matter of Ashley v Curtis, 67 AD2d 828). The points raised by defendants do not convincingly disclose any “special circumstances”. For instance, an award is not any the less appropriate because a prevailing party’s attorney is a nonprofit legal organization which provided its services without charge (Matter of Fairly v Fahey, 75 AD2d 158, order vacated 79 AD2d 35; Kulkarni v Nyquist, 446 F Supp 1274; New York Gaslight Club v Carey, 447 US 54, 70, n 9). It is suggested by the defendants that the courts should discourage organizations like Legal Assistance from taking cases such as this one that hold out the opportunity for an attorney’s fee award, but the history of section 1988 indicates that Congress sought to encourage such litigation by private and publicly funded attorneys alike (see Dennis v Chang, 611 F2d 1302, supra).
Nor am I impressed with the argument that Legal Assistance was somehow culpable for pursuing this claim in the face of a demonstrated willingness by the Department of Social Services to take action in the same direction. There has been no showing that the plaintiffs or their attorneys were aware of the steps taken by the department in this matter before the commencement of their lawsuit. Nor has any appreciable duplication of taxpayer financed effort occurred since, as admitted in the affidavit of the Commissioner of Social Services, the department suspended its activities with respect to Monroe County Resolution No. 440 when it learned of the plaintiffs’ lawsuit.
Moreover, in New York Gaslight Club v Carey (supra), the United States Supreme Court rejected a similar argu *793 ment. In that case the plaintiff, suing under title 7 of the Civil Rights Act of 1964, chose to be represented by public interest attorneys despite the fact that counsel from the New York State Division of Human Rights was available to present the case without charge. The court rejected the argument that the plaintiff’s independent pursuit of her claim in the face of the availability of representation by the division constituted such “special circumstances” as would preclude an attorney’s fee award, since the division attorney would have had “no obligation to the complainant as a client.” (447 US, at p 70.)
The same reasoning defeats the position taken by the defendants. There is nothing in the moving papers or the Social Services Law to indicate that the efforts commenced by the Commissioner of Social Services were, or would have been, in any way affected by an obligation to the present plaintiffs as clients.
Finally, the defendants complain that they have been prejudiced by the nine and one-half month delay between the Court of Appeals dismissal of the last appeal taken and the making of the present motion. However, while delays of this sort are not to be encouraged, no such prejudice has been demonstrated as would rise to the level of “special circumstances” rendering an award unjust. If the defendants have been prejudiced because certain personnel have left Legal Assistance’s employ and are no longer available to testify firsthand to work for which the plaintiffs now seek a fee, that circumstance may be addressed to the reasonableness of the amount sought. It is not a persuasive argument for denying an award altogether since at least some of the attorneys who worked on this lawsuit are available to testify.
Accordingly, I find that a reasonable attorney’s fee should be awarded to the plaintiffs, pursuant to section 1988 of title 42 of the United States Code. Under the circumstances, however, a determination as to such a fee should be made only after an evidentiary hearing.
The plaintiffs have relied in their moving papers upon the affidavits of two Legal Assistance staff attorneys, Rene H. Reixach and Ian C. De Waal. They describe *794 generally the efforts expended in furtherance of this lawsuit by themselves, three other staff attorneys, two law clerks and a paralegal. Drawing upon memory and office records, the affiants constructed for each person who worked on the case a chart which lists, by date, the number of hours spent. The $10,222.75 requested as a reasonable attorney’s fee is broken down as follows:
Attorney time:
Rene H. Reixach........52 hours at $65 an hour $3,380.00
Ian C. De Waal......69.1 hours at $65 an hour 4,491.50
David Beier............14 hours at $65 an hour 910.00
Daniel Pozner ........13.5 hours at $65 an hour 877.50
Susan Bloom ........ 1.75 hours at $65 an hour 113.75
Totals: 150.35 hours at $65 an hour $9,772.75
Law Clerk time:
Steven Brandt.........2.5 hours at $45 an hour $112.50
Joann Betlem ........3.5 hours at $45 an hour 157.50
Totals: 6.0 hours at $45 an hour $ 270.00
Paralegal time:
Miriam Shapiro........6.0 hours at $30 an hour $ 180.00
The charts compiled for Rene Reixach, Ian De Waal and David Beier also list the general nature of the work done on each occasion. The charts for the others do not.
In addition to constructing the time charts, Reixach and De Waal have briefly outlined their prior experience and have listed the results achieved in other litigation in which they were involved. De Waal’s affidavit also includes some information as to the legal background of *795 David Beier, but nothing is provided for Daniel Pozner, Susan Bloom, the law clerks or the paralegal.
While the amount ultimately awarded as a reasonable attorney’s fee is within the discretion of the court, there have evolved standards to which that discretion must adhere (see, e.g., Washington Fed. Sav. & Loan Assn, v Village Mall Townhouses. 90 Misc 2d 227; Johnson v Georgia Highway Express, 488 F2d 714, supra). And although the hours spent on a case are important ingredients in the determination of an award, they provide only a starting point (City of Detroit v Grinnell Corp., 495 F2d 448). “The valuation process requires definite information, not only as to the way in which the time was spent (discovery, oral argument, negotiation, etc.), but also as to the experience arid standing of the various lawyers performing each task” (Washington Fed. Sav. & Loan Assn, v Village Mall Townhouses, supra, pp 230-231).
Johnson v Georgia Highway Express (488 F2d 714, supra) is cited with approval by the Appellate Division of this Department (see Harradine v Board of Supervisors of Orleans County, 73 AD2d 118, 124, n 5, supra) and in the legislative history of the Attorney’s Fees Awards Act of 1976 (1976 US Code Cong & Admin News, vol 5, p 5913). That case sets forth 12 criteria a court should consider when making an attorney’s fee award. The first factor discussed, and perhaps the most important one for the purposes of this case, is the time and labor actually required. The court notes: “The trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities. If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized. The time of two or three lawyers in a courtroom or conference when one would do, may obviously be discounted. It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate.” (488 F2d, at p 717).
*796 The present record gives this court no indication as to how the time of at least three attorneys was spent. In addition, there is little information as to the relative experience and standing of the various lawyers who performed work for this lawsuit. Although the salaries paid to its attorneys by Legal Assistance will probably not indicate the proper measure of a reasonable rate (Rodriguez v Taylor, 569 F2d 1231, cert den 436 US 913; Torres v Sachs, 538 F2d 10; King v Greenblatt, 560 F2d 1024, cert den 438 US 916), it might assist the court to know the relative pay scales for those who worked on this case.
In addition, the affidavits do not disclose whether, among the attorney hours submitted, there was unnecessary duplication of effort. It may be that some of the work performed by the plaintiffs’ attorneys was nonlegal in nature and for that reason may deserve a lesser hourly rate.
Accordingly, an evidentiary hearing is ordered and the matter is respectfully referred to Part I for that purpose.
Submit order.

. Other courts have held that a motion for Federal statutory attorney’s fees is sufficiently collateral to the underlying claim to permit its being brought after judgment (see, e.g., Memphis Sheraton Corp. v Kirkley, 614 F2d 131). This latter view was apparently adopted sub silentio by the Appellate Division in Harradine v Board of Supervisors of Orleans County (73 AD2d 118).

. Prior to Justice Fritsch’s order of October 20, 1978, the plaintiffs obtained two preliminary orders in this matter. On December 20, 1976 Justice James H. Boomer heard and granted a motion for a preliminary injunction. When the defendants appealed this order the plaintiffs sought and obtained from Justice Harry D. Goldman a vacatur of the automatic stay of the preliminary injunction.

. Although the United States Supreme Court has recently held that State legislators are immune under Federal law from injunctive, declaratory and monetary relief, including section 1988 attorney’s fees, for their legislative acts (Supreme Ct. of Va. v Consumers Union, 446 US 719), this issue is foreclosed from relitigation by virtue of the Appellate Division’s decision in Felder (supra). Moreover, it is apparent that at least part of the prospective relief granted against these defendants was directed against administrative and enforcement activity, from which they would not be immune (Supreme Ct. of Va. v Consumers Union, supra).