Janie URBINA, Maria Cosme, Janie Gelista, Juan Vasquez, Jesus Montemayor, Arturo Bernal, Gilberto Cosme, and Martina Duran, Plaintiffs,

v.

Arthur QUERN, Director of the Illinois Department of Public Aid, et al., Defendants.

No. 72 C 2064.

United States District Court, N. D. Illinois, E. D.

Jan. 8, 1980.

Bruce L. Goldsmith, F. Thomas Hecht, Illinois Migrant Legal Assistance Project, Chicago, Ill., for plaintiffs.

Welfare Litigation Div. of Ill. Atty. General's Office, Chicago, Ill., for defendants.

## MEMORANDUM DECISION

MARSHALL, District Judge.

In this complex welfare litigation, plaintiffs challenged, on constitutional grounds, the failure of township supervisors and the Illinois Department of Public Aid (IDPA) to supervise the Illinois Aid to the Medically Indigent (AMI) Program. After class certification, extensive discovery and an opinion granting summary judgment in favor of plaintiffs and against the township supervisors, we denied plaintiffs' motion for a permanent injunction against IDPA. We invited plaintiffs, however, to submit a more tightly drawn injunction. Plaintiffs submitted such an injunction, which we entered on June 29, 1978. Plaintiffs then submitted a motion for attorney's fees against IDPA, pursuant to 42 U.S.C. § 1988, which is now pending.

In their response to plaintiffs' motion, defendants argue first that plaintiffs' attorneys, who work for the Illinois Migrant Legal Assistance Project (IMLAP), a nonprofit legal aid organization, should not receive fees measured by the prevailing market rate. Instead defendants contend that plaintiffs' counsel should receive fees based on their salaries or on the fees provided in the Criminal Justice Act, 18 U.S.C. § 3006A. Further, defendants admit that plaintiffs are prevailing parties, but argue that the limited extent to which plaintiffs prevailed justifies only a limited fee award. Finally, defendants challenge some of the hours claimed by plaintiffs' counsel.

█ At the status hearing on this case held on October 25, 1978, we indicated that we would follow our tentative ruling in *Custom v. Quern,* D.C., 482 F.Supp. 1000, that legal aid attorneys are not entitled to fees at an hourly rate which exceeds that which is necessary to recompense the agency for the cost of providing the services. Accordingly, we ordered plaintiffs' counsel to submit data relating to its costs. We have now reconsidered our ruling on this issue. For the reasons stated in the memorandum opinion in *Custom*, attached hereto as an appendix, we have determined that legal aid attorneys are entitled to fees at the prevailing market rate. Therefore, we now must determine whether plaintiffs have substantially prevailed and if so, whether all of the claimed hours are reasonable.

A brief summary of the litigation will illuminate our determination of whether plaintiffs have substantially prevailed. Plaintiffs' complaint alleges that maladministration of the AMI and the failure of township supervisors and the IDPA to administer and supervise the program violated plaintiffs' Fourteenth Amendment equal protection and due process rights. The result of this alleged maladministration was that the program was administered in a totally arbitrary and capricious pattern from township to township. After we certified a class of all persons eligible for AMI, the parties submitted cross motions for summary judgment. On May 20, 1975, we ruled on the motions. After resolving some of the eligibility questions under state law, we granted plaintiffs' motion for summary judgment as to the township supervisors. The supervisors were later dismissed pursuant to a consent decree. We denied the motion as to IDPA, because although we found that IDPA had a duty under state law to supervise the administration of AMI, we could not determine what supervisory functions IDPA already performed. Thereafter, plaintiffs submitted a stipulation of facts detailing what supervisory duties IDPA performed over AMI. Contending that IDPA's supervisory activities were entirely inadequate, plaintiffs sought permanent injunctive relief.

In our memorandum decision of February 28, 1978, we first considered plaintiffs' equal protection theories. After rejecting several possible equal protection theories, we noted that the facts supported a claim of intentional geographic discrimination. This claim was based on IDPA's policy of supervising only state funded units. We noted, however, that a rational basis, not yet shown by IDPA, could support the discriminatory classification.

We then considered possible due process violations. Noting that the stipulated facts contained numerous examples of maladministration which could support claims of deprivation of due process, we held that plaintiffs had a substantial due process claim which precluded dismissal of the pendent state claims.

In considering the state law claims and the issuance of a permanent injunction, we noted that the Illinois statute pursuant to which the duty to supervise arose, Ill.Rev. Stat., ch. 23, § 12–3, did not indicate specifically what activities were imposed by the duty. Moreover, the injunction proposed by plaintiffs was not sufficiently specific in defining supervision to guide the defendants' compliance with the injunction. We did note, however, that the failure of § 12–3 to delineate IDPA's specific supervisory duties should not preclude injunctive relief. Therefore we suggested as an appropriate remedy an injunction which would focus on the specific threatened constitutional violations and which would be tailored to avoid such violations.

On June 22, 1978, plaintiffs submitted such an injunction, which we entered on June 29, 1978. The injunction required IDPA (1) to insure that all units are aware of the AMI program and have current copies of the General Assistance Manual, (2) to insure that all units have state mandated application forms, (3) to ascertain whether each unit issues timely, written decisions on applications and to request such decisions from units that do not, (4) to determine that each unit has procedures designed to inform unsuccessful applicants of their right to appeal to the Public Aid Committee, (5) to ascertain whether each county has a Public Aid Committee in each county, (6) to ascertain whether each such committee has a current copy of the General Assistance Manual and has procedures for handling appeals, (7) to inform each committee of the unit's obligation to submit written fact statements before each appeal, and (8) to determine that each committee issues timely, written decisions applying state standards of eligibility.

■ We believe that the relief afforded by this injunction cannot be characterized as *de minimus.* The purpose of the suit against IDPA was to obtain injunctive relief requiring IDPA, through supervision, to prevent abuse and maladministration of the AMI program. The IDPA is now required

to perform supervisory functions, relating to all units, designed to insure uniform and equitable application of the AMI program. Moreover, the fact that IDPA did voluntarily undertake some supervisory tasks subsequent to the filing of the complaint does not allow the defendant to avoid attorney's fees. *See* H.Rep.No.94–1558, 94th Cong., 2d Sess., p. 7, U.S.Code Cong. & Admin.News 1976, p. 5908. *See* Exhibit A to Plaintiffs' Reply Brief in Support of Motion for Assessment of Attorney's Fees. Finally, so long as plaintiffs have received the relief requested, plaintiffs have prevailed under § 1988 regardless of whether they prevailed on a constitutional or state law theory. *See Kimbrough v. Arkansas Activities Association,* 574 F.2d 423, 426 (8th Cir. 1978); *Bond v. Stanton,* 555 F.2d 172, 174 (7th Cir. 1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978). Plaintiffs have received the relief requested and have substantially prevailed.

■ Mr. Goldsmith seeks compensation at the rate of $60 per hour for 222.96 hours. Mr. Hecht seeks fees at the rate of $40 per hour for 91.50 hours. Defendants challenge some of the hours charged by both attorneys. Although defendants have specified precisely which hours are excessive, the only support for each challenge is a conclusory statement that the hours are "excessive" or "duplicative" or constitute "nonlegal work." We reviewed the hours charged by plaintiffs' attorneys, and we find them to be reasonable. Plaintiffs' counsel seek fees for approximately three hundred hours. This figure is eminently reasonable for a case spanning six years and involving several substantive motions. Moreover, IDPA does not contend that any of the time charged to IDPA should have been charged to other defendants.

■■ One of defendants' contentions deserves further comment, however. Defendants argue that plaintiffs should not receive fees for the 3 hours spent by Mr. Goldsmith and the 42.5 hours spent by Mr. Hecht on the petition for attorney's fees because those hours benefit only the attorneys and not the plaintiffs. We agree, however, with the cases which allow fees for time spent on fee petitions on the ground that denying such fees would have the effect of diluting the fee award. *See Gagne v. Maher,* 594 F.2d 336 (2d Cir. 1979); *Lund v. Affleck,* 587 F.2d 75 (1st Cir. 1978); *Prandini v. National Tea Co.,* 585 F.2d 47 (3d Cir. 1978). *See also Rosenfeld v. Southern Pacific Co.,* 519 F.2d 327 (9th Cir. 1975); *Miller v. Amusement Enterprises Inc.,* 426 F.2d 534 (5th Cir. 1970). If an attorney must spend considerable time litigating a fee petition without receiving fees for that time, then his hourly rate will be effectively reduced. This would have a detrimental effect on the incentive to accept civil rights cases.[1] This reasoning is especially applicable in the instant case, in which plaintiffs' counsel had to spend considerable time briefing the issue of the proper hourly rate for legal aid attorneys. Therefore, we hold that plaintiffs' attorneys are entitled to fees for all of the hours claimed, including the hours spent litigating the fee issue.

We also believe that the $40 per hour hourly rate for Mr. Hecht and the $60 per hour figure for Mr. Goldsmith are both reasonable in light of their experience and the complexity of the case. In *Gonzalez v. Grabavoy,* No. 76 C 3933, we awarded these two attorneys the hourly rate requested here. *See Gonzalez v. Grabavoy,* No. 76 C 3933 (Unpublished Memorandum Decision, August 14, 1978). These rates are not so high as to justify the exercise of our discretion to lower the fees because the defendant is a state agency. *See Custom v. Quern,* 482 F.Supp. 1000 (D.C.1980). Finally, we decline to apply the sliding scale of fees for different types of work.

---

1. A statutory fee award, assessed against the losing party, is distinguishable from an award of fees which comes from a fund awarded to plaintiffs. In a fund case, a conflict of interest arises between plaintiffs and their attorneys, because an award of fees for time spent obtaining attorney's fees has the effect of reducing plaintiffs' recovery. *See Lindy Bros. Builders of Philadelphia v. American Radiator and Standard Sanitary Corp.,* 540 F.2d 102 (3d Cir. 1976). No such conflict arises in a statutory fee case.

Accordingly, judgment will enter in favor of the plaintiffs and against the defendants awarding fees in the amount of $60 per hour for 222.96 hours of Mr. Goldsmith's time and $40 per hour for 91.50 hours of Mr. Hecht's time for a total of $17,037.50. The judgment should be paid directly to plaintiffs' attorneys.